COFFEY *v.* UNIVERSAL LIFE INS. CO.

*(Circuit Court, E. D. Wisconsin.* May 20, 1881.)

**1. LIFE INSURANCE POLICY—FORFEITURE—RELIEF.**

The plaintiff was the holder of a policy issued by the defendant company, which provided that in case of default in any payment of premiums after two full years' payment had been made, the policy might be exchanged for a paid-up endowment policy for a certain amount, subject to the condition that the policy, duly receipted, "shall have been transmitted to and received by the company within 60 days after such default." The premium due August 23, 1877, was unpaid, and no offer to surrender the original policy for a paid-up policy was made by the plaintiff until March, 1879. *Held:*

(1) That failure to transmit the policy to the company within the 60 days after default, in the absence of circumstances adequate to excuse non-compliance with this condition, involved the loss of all right of the plaintiff to the paid-up policy.

(2) That the company, in the light of all the facts and circumstances of the case—having refused, by its agent, to accept the premium on the day it was due, because of proceedings pending against it for dissolution and the appointment of a receiver, and not having thereafter given the plaintiff any notice of an opportunity to pay the premium elsewhere, and having, in reply to his letters of inquiry, denied his right to any information, and having led him to suppose that his policy had wholly lapsed, and that it could do nothing towards reviving the same until clear of the court proceedings, and then only as an act of grace or favor—were estopped to assert that the plaintiff had forfeited his right to the paid-up policy by failure to transmit the original policy within 60 days after non-payment of the premium on August 23, 1877.

In Equity.

*Dixon & Noyes,* for complainant.

*Sleeper & Whiton,* for defendant.

DYER, D. J. This is a bill to compel the defendant company, which is a corporation of the state of New York, to issue to the complainant a paid-up policy of life insurance of the amount of $600; and the controversy between the parties arises upon the following state of facts:

On the twenty-third day of May, 1868, the complainant procured from the defendant company a policy of insurance on his own life, for the sum of $1,000, payable to Honora Coffey on the twenty-third day of May, 1883, or in case of complainant's death before that day, then within 30 days after notice and proof of death. The policy required the premiums to be

paid in four instalments, of $14.26 each, on the twenty-third day of May, August, November, and February, in each year, and contained a condition tnat in case of default in the payment of either of the premiums the policy should become void, and all payments made thereon should be forfeited, except as further provided. By the terms of the policy it was further stipulated, that, in case of default in any payment after two full years' payments had been made thereon, the policy might be exchanged for a paid-up endowment policy for an amount stated in a table given in the original policy, subject to the condition that the policy, duly receipted, " shall have been transmitted to and received by the company within 60 days after such default, and that no condition of the policy shall have been violated." By the table annexed it was made to appear that the complainant, after nine years' payment of premiums, would be entitled, under the conditions before stated, to a paid-up term policy for $600.

All premiums were paid to the twenty-third day of May, 1877, inclusive, covering a period of nine years from the date of the policy. Payments were made to local agents of the company in Wisconsin. On the twenty-third day of August, 1877, the complainant went to the company's agent in Milwaukee, as usual, and desired to pay the premium due on that day, but was told by the agent that the business of the company was in the hands of a receiver, or would be, and that he had no authority to receive the money. The complainant testifies that he offered to pay the premium due on that day, but was advised by the agent not to make any more payments until the business of the company was settled.

It appears that on the twelfth day of July, 1877, the attorney general of the state of New York filed an information against the company, in the supreme court of that state, alleging its insolvency, and praying for an order to show cause why its business should not be closed, and for a decree dissolving the company and appointing a receiver. On the eighteenth day of July, 1877, an order was entered by the court in those proceedings permitting any policy-holder, until further order, to pay to the United States Trust Company any premiums thereafter becoming due on policies issued by the insurance company, with the same effect as if paid to said company. Afterward, and on the twenty-third day of August, 1877, which was the day when the premium on complainant's policy was due, the court made an order restraining the company from exercising any of its corporate rights, privileges, and franchises, except receiving and paying moneys as thereinafter allowed, and from paying out, or in any way transferring or delivering, to any person, any of the effects, moneys, or property of the company, except salaries of employes and officers then due, and from collecting or receiving any debts or demands except interest, agents' balances, and premiums, until the court should otherwise order. This order remained in force until October 29, 1878, with certain modifications,—such of which as are material here will be presently referred to. On the 1st day of September a further motion was made for the appointment of a receiver. Orders were duly entered postponing the hearing of this motion from September 4th to September 8th, and from the latter date to September 14, 1877, on condition that none of the policies of the company should be decreed to have lapsed nor

become forfeited by reason of the non-payment of premiums due after September 3d and before the decision of the motion for a receiver; to which condition the company consented. Again, on the fourteenth of September, the hearing of all motions in said proceedings was adjourned until November 17, 1877. On the thirteenth day of October of that year an order was entered permitting the company to accept payment of debts due to it, including payments on mortgages, and restraining all persons and corporations from commencing any action or proceedings against it. On the eighth day of December, 1877, an order was made postponing the hearing of the motion for a receiver until such time as it might be brought on by the attorney general, on five days' notice. This order also provided that the time of payment of all premiums due and to become due on outstanding policies be extended 30 days after the entry of the final order on the motion for a receiver; and all injunctions theretofore granted were continued in force until the final order of the court, except in particulars further specified, but not material here. Various proceedings were thereafter had, until, on the twenty-ninth day of October, 1878, an order was made vacating the order of August 23, 1877, so far as it restrained the company and its officers from exercising any of the corporate rights, privileges, and franchises of the company, and the company, and its trustees and officers, were authorized to resume their powers in the business of the corporation and their control over its assets. This order required that a copy of the same be sent to every policy-holder, with a notice declaring the company solvent, and requiring such policy-holder to pay his premiums, past due and unpaid, within 90 days from the day of mailing a copy of the order and notice, and provided that the company should not forfeit any insurance, by reason of the non-payment of past-due premiums, until after the expiration of said 90 days; the court reserving the power to relieve from any forfeiture by reason of the non-receipt of a copy of the order and notice, on good cause shown.

It appears that about the twenty-first day of July, 1877, the company deposited in the mail at New York a postal card, upon which was printed so much of the order of the court in New York, of date July 17, 1877, as permitted policy-holders to pay premiums thereafter becoming due on their policies to the United States Trust Company, which was undoubtedly intended to be sent to the complainant, but was in fact addressed to Honora Coffey, Milwaukee, Wisconsin. Prior to August 23, 1877, a postal card was also mailed, giving notice of the amount of the premium falling due on the complainant's policy on August 23d, and of the time when due, and that it could be paid at the office of the company, or to an agent, when such agent produced a receipt signed by an officer of the company; but this was also addressed to Honora Coffey. Neither of these postal cards was received by the complainant, but he was informed by letter from the secretary of the company, of date March 9, 1878, of the order of July 17, 1877. Correspondence between the attorneys for complainant and the company, extending from August 3, 1878, to March 29, 1879, shows that about the twenty-fifth of February, 1879, the former were informed of the entry of the order of the court, of date October 29, 1878, and that about the seventeenth day of March, 1879, the com-

plainant formally offered to receipt and transmit his policy to the company, and requested the issuance of a paid-up policy to him, or an opportunity to pay the back premiums then unpaid. The company declined to comply with either of these requests, on the ground that the notices before mentioned were duly sent; that the complainant was advised of the situation of affairs when the proceedings against the company were pending, and failed to seasonably take any steps either to keep his policy in force, or by receipt and transmission of the same to procure a paid-up policy. The complainant, in his testimony, says that he did not receipt and transmit the policy within 60 days after August 23, 1877, because he did not think the company was in existence, and because he had no instructions so to do.

Upon this state of facts it is contended in behalf of the complainant that by the payment of nine years' premiums he purchased paid-up insurance to the amount of $600; that the transmission and receipt of the policy within sixty days after default in any payment of premium was not a condition precedent to the right to have a paid-up policy; that by the proceedings against the company in New York it was then disabled to issue such a policy, even if the original policy had been receipted and transmitted within the sixty days, and therefore strict performance of the condition by the complainant was excused; that, under all the circumstances, the ultimate offer to receipt and return the policy, and the demand of a paid-up policy, were seasonably made; and that the court ought not to make such a decree as would operate to enforce a forfeiture of the complainant's rights under his policy. The grounds for relief thus urged are all combated by counsel for defendant, who insists that time was of the essence of the condition requiring transmission and receipt of the policy within sixty days after default in the payment of any premium; that by the failure to make payment, and then the further failure to receipt and transmit the policy within the required time, the policy lapsed, and all right to a paid-up policy was lost; that the temporary disability of the company did not excuse non-compliance with the condition requiring action on the part of the insured within the prescribed time; and that the offer to receipt and return the policy after such disability was removed was not seasonably made.

The case has been argued rather upon bare propositions of

law touching the proper construction of the clauses in the policy, and the strict rights of the parties under the literal letter of the policy, than in the light of the exceptional facts and circumstances of the case.    Looking alone at the policy, it may be said of it, in substantially the language of the court in *N. Y. Life Ins. Co.* v. *Statham,* 93 U. S. 30, that the contract is not an assurance for a single year, with a privilege of renewal from year to year by paying the annual premium, but that it is an entire contract of assurance for 15 years, or for life, if the assured should die before the expiration of that period, subject to discontinuance and forfeiture for non-payment of any of the stipulated premiums, except that in case of default in any payment after two full years' payments had been made, the policy might be exchanged for a paid-up policy for a certain amount, on transmission of the original policy, duly receipted, to the company within sixty days after such default.    This was the contract.    In the absence of anything to save the case from the operation of the letter of the policy, it was undoubtedly the duty of the assured, if he wished to keep the policy in continuing force, to pay the premium due August 23, 1877, on that day.    If, on the other hand, he wished to secure a paid-up policy, he could make default in the payment of the premium, and then his duty was to transmit the original policy, duly receipted, to the company within sixty days after such default.    These were conditions precedent in the one case to the maintenance of his rights under the original policy, and in the other to his right to a paid-up policy.    Failure to perform either, if there were no circumstances adequate to excuse non-compliance with these conditions, involved a lapse of the policy and loss of all rights thereunder.    This conclusion is sustained by the better authorities on the subject.

But cases of the general character of this, sometimes arise, in which the circumstances are deemed adequate to justify the courts in relieving a party from such consequences, and in which such relief is deemed consonant with proper observance of the rights of parties under their contract.    Does this case fall within that category?

On the twenty-third day of August, 1877, the assured applied to the company's agent to pay the premium then due. He had paid the premiums in all previous years to local agents. The company had authorized it, or at least had sanctioned it, by acceptance of the payment. With reference to the premium due August 23, 1877, he received no notice to do otherwise. A notice that the premium would be due on that day, and that the holder of the policy might pay it at the office of the company in New York, or to an agent who should produce a receipt signed by an officer of the company, was mailed by the company, but it was not addressed to the complainant, and was not received by him. This was no fault of his. The agent to whom he offered to pay the premium refused to accept it. This, under the circumstances, was the refusal of the company. In the beginning, then, we find that the assured was deprived of the opportunity to pay his premium on the day it was due, and thereby keep his policy in force, by refusal of the company to accept the premium. Moreover, the agent informed the assured that the business of the company would be or then was in the hands of a receiver, and advised him not to make any more payments until the business of the company should be settled. Perhaps the agent was not authorized thus to speak for the company, but it is still a material fact that this information and advice emanated from one with whom the assured was authorized to deal as the local representative of the company; and the assured, it appears, was led to rely and rest upon this information. Meantime, the fact was that proceedings had been instituted and were then pending in the courts of New York for a dissolution of the corporation; and, on the very day the assured was seeking to pay the premium on his policy in Wisconsin, the company was enjoined in New York from exercising its corporate rights, privileges, and franchises, except in certain very limited particulars. It is true that on July 18, 1877, an order was made permitting policy-holders to pay their premiums to the United States Trust Company; but again, by the fault of the insurance company, notice of this order was mailed under the wrong address, and was never

received by the complainant, nor, so far as the proofs show, did he know that such an order had been entered until March, 1878, when mention was made of it in a letter which he received from the secretary of the company. Under the circumstances stated, the complainant rested from August, 1877, until February, 1878, when it appears he wrote a letter, addressed to the receiver of the Universal Life Insurance Company, which the proofs indicate was a letter of inquiry, and which was probably thus addressed because he had been led to suppose, from statements made by the local agent of the company in August previous, that a receiver was in charge of the affairs of the company. To this letter the secretary of the company made answer by communication of date February 18, 1878, as follows:

"We beg leave to state to you that no receiver has been appointed for this company, and, further, to state to you that we think it is quite unnecessary to answer the questions you propound to the receiver, for the reason that your policy No. 4472 became absolutely forfeited, according to its terms, for the non-payment of the premium due August, 1877. You have, therefore, no such interest in the company's affairs as would warrant any reply to your questions."

Thus, after the company, by its own agent, had refused to accept the premium offered on the day it was due, and had given the assured no notice of opportunity to pay it elsewhere, and he had been led to rest inactive for months, when first he sought information to which he was, under the circumstances, then clearly entitled, he was curtly told, in substance, by the secretary of the company, that his policy had become absolutely forfeited for non-payment of the August premium, and that therefore he had no such interest in the company's affairs as would warrant a reply to his inquiries. In this manner was the assured dealt with at a time when, upon a showing of the facts then existing, no court deserving the name of a court of equity would have hesitated to compel either the acceptance of the unpaid premiums for the purpose of keeping the policy in force, or the acceptance of a surrender of the policy as the basis of a right to a paid-up policy, as the policy-holder might elect.

But the complainant, still persistent in efforts to obtain

information, on the fifth of March, 1878, addressed a letter to the superintendent of insurance of the state of New York, which, it seems, was put into the hands of the secretary of this company, and he replied, stating, among other things, that prior to the date when the premium of August, 1877, became due the company had mailed to the complainant a notice that that premium could be paid to the company direct, or to the United States Trust Company; that, if paid to the trust company, it would be subject to the order of the court in the matter, and that an order to that effect was made by the court on the seventeenth day of July, of which all the policy-holders had due notice. This statement was incorrect in several particulars. No such notice had been sent to the complainant, nor did the notice which the company misdirected, according to its own proof, state that the premium could be paid to the company direct, nor did the order itself so provide. The complainant was then informed that he had chosen to act upon reports and public assertions in reference to the affairs of the company, instead of making inquiry direct at the office. And this was said in the face of the secretary's letter of February 18th, in which the assured was informed that his policy was forfeited, and his requests for information were summarily refused, and treated as the inquiries of an impertinent intruder. In the letter of March 9th the secretary further says :

"As the matter now stands the company is still, under the order of the court, prevented from entering into any agreement or reviving any policies which have lapsed, or doing anything except to the extent permitted by the special order of the court issued in reference thereto. However much disposed we might be, to re-instate your policy, *we cannot do so until we are clear of the court proceedings.* Then we *can give the matter further consideration.* We, of course, can make no promise to hereafter restore the policy on the payment of the premium, and can only say that we will consider such facts as you may have to present when we are able to act as a company."

Here the matter was left to rest until August, 1878, when correspondence began between the company and the complainant's solicitors. Now, if it be said that in March, 1878, the complainant was thus advised that the court in New York had in July, 1877, authorized the payment of premiums to

the United States Trust Company, and that the complainant should then either have made payment, or within sixty days thereafter have transmitted his policy, duly receipted, and asked for a paid-up policy, it may well be replied that in the preceding February the secretary of the company had asserted to the complainant that his policy was already forfeited; and the statements in the letter of March 8th, just recited, were such as to naturally lead the assured to understand that his policy had wholly lapsed, and that, if anything was thereafter done in the way of reviving it, it could only be done after the company was clear of the court proceedings, and after it could act as a company, and then only as an act of grace or favor. And thus the action of the company made it natural to suppose that nothing could be done by either it or the complainant until after its original power and authority to act were restored to it; and it was upon this theory, evidently, that the complainant's counsel acted from August, 1878, to March, 1879, as is shown by their letters of inquiry, in evidence, written to the company.

It is noticeable, also, that although the order of the court in New York, made October 29, 1878, by which the company was authorized to resume business, required notice of the order to be sent to policy-holders, and gave to the latter ninety days after sending such notice in which to pay past-due premiums, no notice in obedience to that order was sent to the complainant, and it was not until about February 25, 1879,—nearly a month after the ninety days had expired,— that the complainant, by his counsel, was informed of that order, although his counsel had been in correspondence with the company since August, 1878. Finally, in March, 1879, the company was requested either to recognize the policy by accepting the past-due premiums or to issue a paid-up policy on transmission of the original, duly receipted. The reasons assigned by the company for refusing so to do were that the notices before mentioned were duly sent to the complainant; that he did not write to the company; and that he made no attempt to ascertain the facts, either from the company or its local agent in Milwaukee,—most of which reasons were,

as we have seen, unfounded in fact.    And further, as late as
March 14, 1879, it was represented by the company that it
was still in the hands of the court, with the order of October
29th yet in force and the application for a receiver still
pending.    Now, undoubtedly, if the circumstances were such
as to excuse the complainant from literal compliance with
the condition of the policy as to its transmission, duly re-
ceipted, it was his duty, if he would avail himself of the
right to a paid-up policy, to act with requisite promptness
after those circumstances ceased to exist.    And I think such
action was taken when a surrender was offered, in March,
1879.    In the light of all the facts and circumstances of the
case, I have no hesitation in holding that the complainant
had at that time a right to take the necessary steps to secure
a paid-up policy.    After all that transpired between the com-
plainant and the company, from August 23, 1877, to March,
1879, I think the company should be held estopped to assert
that the complainant forfeited his rights by failing either to
pay the premium on the twenty-third day of August, 1877,
or to transmit the policy receipted and to demand a paid-up
policy within sixty days after such default.

I have carefully examined and thoroughly considered the
authorities cited on the argument, and especially the case of
*Whitehead* v. *Universal Life Ins. Co.*, decided by the supreme
court of Mississippi, unreported, and in which a manuscript
copy of the opinion has been furnished.    In that case the
court held that the clause in the policies of this company
requiring the policy to be transmitted, duly receipted, within
sixty days after default in the payment of any premium, if a
paid-up policy was desired, was a condition precedent; that
time was of the essence of the contract, and that, to entitle
the assured to a paid-up policy, he must have strictly com-
plied on his part with the literal terms of that condition,
notwithstanding the company was disabled by the proceed-
ings against it in the courts of New York to issue a paid-up
policy.    The question arose in that case on demurrer to a bill
to enforce the issuance of a paid-up policy, filed by the rep-
resentative of the assured after the latter's death; and it was

undoubtedly well decided that the election to take a paid-up term policy should have been made during the life of the assured, and on that ground alone the demurrer was sustainable. But, on the general question decided, it is to be observed that the case does not show that the bill set out the proceedings in New York against the company, further than to state the institution and general character of the proceedings, the injunctional order of the court of August 23, 1877, and that such order continued in force until October 29, 1878. In view of the manner in which the question there arose, the fact that the bill was filed after the death of the assured by his representative, and of the absence of many of the most material facts brought out in the case at bar, I do not regard the decision in the Mississippi case as an authority that should be deemed controlling here.

Referring again to the proceedings in New York, it is, perhaps, worthy of observation that it appears from the order of the court made October 29, 1878, by which the company was declared solvent, that pending those proceedings the company procured releases of policies from the holders to the extent of over $7,000,000, and that policies which had become claims by the death of the insured and matured endowments, to the extent of over $600,000, had been released one-half by the holders thereof. These facts were recited in the order, in connection with the judgment of the court, that the company had become solvent, and show that there was cause for the institution of the proceedings, and that the disability of the company to act arose from its financial condition and the consequent intervention of the court; and that it was only removed when solvency was brought about by the cancellation of a large amount of its liabilities.

A decree will be entered requiring the defendant to issue and deliver to the complainant a paid-up policy for $600, on surrender of the original policy, properly receipted,—the special terms of which decree can be settled hereafter.

NOTE. The cases cited on the argument were *Chase* v. *Phœnix Mut. Life Ins. Co.* 7 Ins. L. J. 93; *Dorr* v. *Same*, Id. 368; *Montgomery* v. *Same*, 8 Ins. L. J. 300; *Desmazes* v. *Mut. Benefit Life Ins. Co.* 7 Ins. L. J. 926;

*Knickerbocker Life Ins. Co.* v. *Dietz,* 8 Ins. L. J. 544; *Winchell* v. *John. Hancock Mut. Life Ins. Co.* Id. 651; *Johnson* v. *Southern Mut. Life Ins. Co.* 9 Ins. L. J. 189 ; *Anderson* v. *St. Louis Mut. Life Ins. Co.* 5 Bigelow Ins. Rep. 527; *Seamans* v. *N. W. Mut. Life Ins. Co.* 3 FED. REP. 325 ; and *Whitehead* v. *Universal Life Ins. Co.*, decided by supreme court of Mississippi, unreported.