Cravens, Appellant, v. New York Life Insurance Company.

In Banc, March 14, 1899.

148  583
f151  615
151  616
148  583
f84a  612
148  583
173  6338
176  2374
96a  2265

1. Insurance : WHEN EXECUTED IN THIS STATE: AGREEMENT IN POLICY: Where payment of premiums during the life and good health of the insured, and delivery of the policy to him, are made conditions precedent for the completion of the policy's execution, and the premiums are paid and the policy delivered to him in this State, it will be held that the policy was executed here, notwithstanding the insurance company is incorporated under the laws of another State, has its chief office there, and the policy and application provide that the contract contained therein shall be construed according to the laws of such other State, and that "the place of the contract is expressly agreed" to be in such other State.

2. ———: ———: GOVERNED BY LAWS OF MISSOURI. Such a contract being executed here, is subject to the laws of Missouri, anything in the contract to the contrary notwithstanding.

3. ———: BUSINESS BY GRACE: MUST CONFORM TO LAWS. Foreign insurance companies which do business in this State, do so not by right but by grace, and must in doing so conform to its laws. More-- over the State may prescribe conditions upon which it will permit such companies to transact business within its borders or exclude them altogether, and in so doing violates no contractual rights of the company.

4. ———: STATUTE: PART OF CONTRACT. A statute with respect to the· subject-matter in force at the time a contract is entered into within this State, becomes a part of the contract, as much so as if copied into it.

5 ———: ———: RULE AS TO WHAT STATUTE GOVERNS. The rule of law seems to be, that when no statute intervenes prohibiting it, a corporation doing business by permission in another State than that of its incorporation may by contract make the law of the State of its incorporation the applicatory law of the contract, but where the laws of the State in which it does business by license prohibits such corporation from making certain kind of contracts, it can act only in accordance therewith.

6. **Life Insurance:** LAPSE: COMMUTATION: DEMAND: PAID-UP POLICY OR EXTENSION OF TIME: STATUTES. The defendant issued its fifteen-year endowment policy for $10,000, and four annual premiums were paid, and default was made when the next annual payment became due in May, and the insured died in November following. The policy provided that, in case of non-payment of premiums, after it had been in force three years, "a paid-up policy will be issued on demand, made within six months after such lapse and surrender thereof, for an amount equal to as many fifteenth parts of the sum above insured as there shall have been completed annual premiums paid hereon, . . . . . and all right, claim or interest arising under statute to any other paid-up policy and to any other temporary insurance, whether provided for by statute or not, is hereby expressly waived and relinquished." *Held,* first, that it was a condition precedent to· the holder's right to a paid-up policy, that demand be made therefor, with surrender of the policy, within six months after the policy lapsed, and no such demand could be waived by the company so as to affect the beneficiary's rights; *and* as no demand was made and no surrender of the policy was offered, section 5986, Revised Statutes 1879, concerning "the unconditional commutation of the policy to non-forfeitable paid-up insurance," does not apply. *Held,* second, that section 5983, providing that three-fourths of the net reserve of

the policy should be applied as a single premium for the temporary extension of the entire policy and prescribing a rule for fixing the term for which such policy shall be in force, does apply, as also does section 5985, providing that in case of the death of the insured within the term of temporary insurance so ascertained, the company shall be bound to pay the amount of the policy less the unpaid premiums with compound interest thereon; *and,* as the insured died within the term thus fixed or ascertained, the amount of the policy less such unpaid premiums and interest must be paid, notwithstanding the waiver of such statutory rights in the policy.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

REVERSED AND REMANDED (with directions).

WILLIAM B. C. BROWN, JAMES H. CRAVENS and KARNES, HOLMES & KRAUTHOFF for appellant.

(1) The contract is a Missouri contract. Fletcher v. Ins. Co., 13 Fed. Rep. 526; s. c., 117 U. S. 519; Wall v. Equitable Life Assur. Soc., 32 Fed. Rep. 273; s. c., 140 U. S. 226; Berry v. Indemnity Co., 46 Fed. Rep. 439; s. c., 50 Fed. Rep. 511; Mutual Benefit Ins. Co. v. Robinson, 54 Fed. Rep. 580; Price v. Ins. Co., 48 Mo. App. 281; Hicks v. Ins. Co., 60 Fed. Rep. 692; Equitable Life Assur. Soc. v. Winning, 48 Fed. Rep. 541; Paine v. Ins. Co., 51 Fed. Rep. 689; Weinfield v. Ins. Co., 53 Fed. Rep. 208; Northwestern Mut. Life Ins. Co. v. Elliott, 7 Sawyer, 17; s. c., 5 Fed. Rep. 228; Pomeroy v. Ins. Co., 40 Ill. 400; Thwing v. Ins. Co., 111 Mass. 109; Hardie v. Ins. Co., 26 La. Ann. 242; St. Louis Mut. Life Ins. Co. v. Kennedy, 6 Bush. 450; McCully's Adm. v. Ins. Co., 18 W. Va. 782. (2) The provisions of the Missouri non-forfeiture law (sections 5983, 5984, 5985 and 5986, Revised Statutes 1879, now sections 5856, 5857, 5858 and 5859, Revised Statutes 1889), in force at the taking effect of the policy in suit, entered into and became a part of said policy, or contract of insurance, and are to be considered as written into it. White v. Ins. Co., 4 Dill. 182;

Hicks v. Ins. Co., 60 Fed. Rep. 692; Havens v. Ins. Co., 123 Mo. 403. (3) The Missouri statutes control all policies upon which two full annual premiums have been paid, issued by life insurance companies authorized to do business in this State. Wall v. Equitable Life Assur. Soc., 32 Fed. Rep. 27; Price v. Ins. Co., 48 Mo. App. 281; Keller v. Ins. Co., 58 Mo. App. 561; Mut. Ben. Life Ins. Co. v. Robinson, 54 Fed. Rep. 580; Berry v. Indemnity Co., 46 Fed. Rep. 439. (4) Section 5984, Revised Statutes of Missouri 1879, gave appellant the privilege of converting her extended insurance provided by section 5983, into a paid-up policy by demanding a paid-up policy within sixty days from the beginning of the extended insurance. No demand for a paid-up policy was ever made. The rights which appellant might have acquired under this section were declined and this section can have no bearing upon the present controversy. (5) The policy in suit does not fall within section 5986, Revised Statutes 1879. It contains no provision for: 1. Either an unconditional cash surrender value. 2. Or, an unconditional commutation to non-forfeitable paid-up insurance. 3. Nor is it contended that the policy in suit: (a) Was within sixty days after default in premium surrendered. (b) Or that a settlement has been had with the company. These conditions precedent prevent the application of section 5986. Hawthorne v. Ins. Co., 5 Mo. App. 73; Northwestern Mut. Life Ins. Co. v. Barber, 17 S. W. Rep. 796; Hexter v. Ins. Co., 15 S. W. Rep. 863; Knapp v. Life Ins. Co., 117 U. S. 411; Sherer v. Ins. Co., 20 Fed. Rep. 886; McLaughlin v. Eq. Life Assur. Soc., 57 N. W. Rep. 557; People v. Ins. Co., 15 Hun. 8; Atty-General v. Ins. Co., 93 N. Y. 70; Porter v. Life Ins. Co., 35 N. E. Rep. 678; Ashbrook v. Ins. Co., 94 Mo. 72; 2 Joyce on Ins., secs. 1184 and 1185; Thorensen v. Mass. Ben. Ass'n, 71 N. W. Rep. 668; Omaha National Bank v. Ins. Co., 81 Fed. Rep. 935; s. c., 84 Fed. Rep. 122. (6) The

policy in suit is controlled by sections 5983 and 5985, Revised Statutes 1879, which together provide: 1. Temporary insurance and the amount thereof. 2. The length of time such temporary insurance shall in each instance continue. Equitable Life Assur. Soc. v. Winning, 58 Fed. Rep. 541; Equitable Life Assur. Soc. v. Clements, 140 U. S. 226. (7) The legislature of the State of Missouri acted within its constitutional authority in enacting the foregoing sections of the statute. Paul v. Virginia, 8 Wall. 168; State v. Stone, 118 Mo. 402; Hooper v. California, 155 U. S. 297; Dugger v. Ins. Co., 32 S. W. Rep. 5. (8) That respondent is a mutual life insurance company is immaterial. It is a foreign corporation doing business in Missouri and its business and contracts like these of every other foreign corporation are subject to the regulation and control of the foregoing sections of the statute. Knights Templars and Masons Life Indemnity Co. v. Berry, 50 Fed. Rep. 511.

F. N. JUDSON for respondent.

(1) Whether or not the policy in suit can be held on any theory subject to the Missouri statute, the facts of the case at bar bring the policy within the exception provided by section 5986, as the unconditional communtation paid-up insurance provided therein was equal at the time of default to that provided by section 5984 of the statute and the provision for extended insurance by the express terms of the statute was, therefore, not applicable. (2) This commutation was an unconditional right of the insured, and it is immaterial that it was dependent upon a demand within six months, instead of demand within sixty days as provided by section 5984, of the statute. It was an unconditional right, in that it required no condition of the insured, which he might at the time of the default be unable to perform. The unconditional commutation of the statute, clearly refers to casual conditions

depending on the facts over which the party has no control. Century Dict., Title, "Condition;" Bouvier's Law Dict., Title, "Condition;" Price v. Ins. Co., 48 Mo. App. 281; Ins. Co. v. Twinny, 12 Kan. 475; Dorr v. Ins. Co., 67 Me. 438. (3) As the statute is in derogation of the liberty of private contract, it must be strictly construed so as to preserve as may be such liberty of contract and the benefit of all reasonble doubts and ambiguities must be given to such liberty of private contract. Sedgwick on Stat. Contracts, 224; Connor v. Railroad, 59 Mo. 285; Meinzer v. Diveling, 66 Mo. 375; Price v. Ins. Co., 48 Mo. App. 281. (4) But apart from the foregoing, the Missouri statute was in no wise applicable to the policy in question and the statute of New York was made the applicatory law of the policy by the express agreement of the parties. Under the fundamental rules of private international law, the applicatory law of the contract is applied according to the presumed intent of the parties *a fortiori*, according to their expressed intent. Wharton on Conflict of Laws, sec. 426; Story on Conflict of Laws, sec. 272; Robertson v. Bland, 2 Burr, 1077; Philmore, 4 Int. 469; Pritchard v. Norton, 106 U. S. 224; Wayman v. Southard, 10 Wheaton 1. The above principle is applied in insurance cases and effect is given to express agreements in the case of contracts in the following cases: Shattuck v. Ins. Co., 4 Clifford 598; Desnoyes v. Ins. Co., 7 Ins. Law J., 928; 3 Am. and Eng. Ency. of Law, 551; Lamb v. Bowser, 7 Bissel, 315; Russell v. Ins. Co., 23 N. Y. 516; Hyde v. Goodnow, 3 N. Y. 25; Bank v. Hume, 128 U. S. 195; Equitable Life Ins. Soc. v. Clements, 140 U. S. 226; Ins. Co. v. Binkley Co., 31 S. W. Rep. 157; Vorhees v. Ben. Soc., 91 Mich. 469; Griesmer v. Ins. Co., 10 Wash. 203; Ins. Co. v. Mech. Sav. B'k & Trust Co., 72 Fed. Rep. 418; s. c., 19 C. C. A. 286. (5) Appellant is now estopped from asserting any further or different claim from that fixed by the policy contract, in that under the tontine plan of insurance embodied therein

Cravens v. Ins. Co.

the holders of the other policies of that class issued during that year, have acquired contingent interests therein, in consideration of the contingent interests enjoyed by her during the life of the insured in the policy contracts of his associates in the same class. Century Dict., title, "Tontine;" Bogardus v. Ins. Co., 101 N. Y. 329; 26 Am. and Eng. Ency of Law 52. (6) The fact that one of the parties to this contract was a New York insurance company doing business in Missouri through the comity of the State, did not prevent the parties from contracting in good faith for the New York law as the applicatory law of the contract. Cooper Mfg. Co. v. Ferguson, 113 U. S. 727; Santa Clara Co. v. Railroad, 118 U. S. 396; Pembina Co. v. Pennsylvania, 125 U. S. 181;, Ins. Co. v. Fields, 26 S. W. Rep. 280; Railroad v. Gebhard, 109 U. S. 527. (7) Parties residing in different States have the right to contract in good faith for the law of either State, although the effect may be as to one of the parties to substitute the foreign for a domestic law which was enacted from considerations of public policy, and was therefore incapable of waiver by the parties. Freeland v. Hern, 7 Cranch 147; Andrews v. Pond, 13 Pet. 65; Miller v. Tiffany, 1 Wall. 298; Bank v. Bank, 12 Wall. 266; Story on Conflict of Laws, secs. 304a and b; McAllister v. Smith, 17 Ill. 328;, 2 Kent Com. (13 Ed.), p. 459; Smith v. Parsons, 55 Minn. 520; Hubbell v. Morristown Land & I. Co., 32 S. W. Rep. 965; Bank v. Young, 37 Mo. 407; Ins. Co. v. Simons, 52 Mo. App. 357; 2 Parsons on Cont., p. 95; Hysinger v. Supreme Lodge, 42 Mo. App. 637. (8) .Even if the Missouri statute could be construed as contended by plaintiff, denying the contractual liberty of the parties and making a different contract for them in violation of and contrary to their expressed intention, the statute so construed would be unconstitutional,, both under the State and Federal constitutions. Cooper Mfg. Co. v. Ferguson, 113 U. S. 728; Lamb v. Bowser, 3. Bissel, 315; State v. Loomis, 115 Mo. 307; Ramsey v. People,,

142 Ill. 380; Braceville Coal Co. v. People, 147 Ill. 66; Richey v. People, 154 Ill. 98; Comm. v. Perry, 155 Mass. 117; California ex parte Ruback, 85 Cal.274; Goodcharles v. Wiseman, 113 Pa. 431; People v. Marks, 99 N. Y. 377; People v. Gilson, 109 N. Y. 389; State v. Goodwell, 33 W. Va. 179; Lowe v. Reese Ptg. Co., 48 Neb. 127; State v. Sangel, 51 N. W. Rep. 858; State v. Julow, 31 S. W. Rep. 781.

BURGESS, J.—This is a suit upon a policy of life insurance for $10,000, issued by the defendant company upon the life of J. K. Cravens, deceased, in favor of the plaintiff, who was his wife. The case was tried by the court, a jury being waived. There was judgment in favor of plaintiff in the sum of $2,670, from which, after an unsuccessful motion for a new trial, she appeals, claiming that she is entitled to recover the sum of $8,749.21, that is, the face of the policy, $10,000, less the two unpaid premiums which were due at the time of the death of the assured, together with interest thereon.

The petition alleges that the policy was issued on the eleventh day of May, 1887; the payment of all annual premiums, until May, 1891; the death of the assured on November 2, 1892; that under the statute the insurance was extended, and was in force at the date of the death of the assured, and asks judgment for the amount of the policy, less the unpaid premiums.

The answer of defendant alleges that it is a mutual insurance company duly incorporated under the laws of the State of New York, and doing business in this State; that by agreement of the parties the law of that State was made the law governing the contract; set up that the assured made default in May, 1891, after paying four annual premiums and tendered the sum of $2,670, the amount of paid up or commuted policy, to which the original policy was entitled by its terms on such default, waiving failure to make demand therefor. It also alleges that other policy holders, that

is, other members of the same tontine class, had by the terms of their respective policies acquired with plaintiff contingent and mutual interests in the profits and surplus to be derived from the premiums on all policies of such class, and that the company on the faith of plaintiff's contract had incurred obligations to the other members of the tontine class, and that plaintiff is now estopped from setting up any other or different claim under the policy.

The answer further alleges that, if the statute of Missouri, relied on by plaintiff, was construed so as to nullify the non-forfeiting agreement upon the faith of which the policy was issued and without which it would not have been issued, and to create and enforce an obligation contrary to the expressed intent of the parties, then the statute so construed is repugnant to the Constitution of Missouri, and to the Constitution of the United States.

The application for the policy is made part of the contract and contains the following provisions:

"2. That inasmuch as only the officers of the home office of the said company in the city of New York have authority to determine whether or not a policy shall issue on any application, and as they act on the written statements and representations referred to, no statements, representations, promises or information made or given by or to the person soliciting or taking this application for a policy, or by or to any other person, shall be binding on said company, or in any manner affect its right, unless such statements, representations, or information, be reduced to writing and presented to the officers of the company, at the home office in the application. . . . .

"4. That under no circumstances shall the policy hereby applied for be in force until the actual payment to, and acceptance of the premium by the company, or its authorized agent during the lifetime and good health of the person on whose life insurance is applied for.

"6.   That the entire contract contained in the said policy and in this application taken together shall be construed and interpreted as a whole, and in each of its parts and obligations, according to the laws of the State of New York, the place of the contract being expressly agreed to be the principal office of the said company in the city of New York."

The policy contains this further provision:

"That if the premiums are not paid, as hereafter provided, on or before the days when due, then this policy shall become void, and all payments previously made shall be forfeited to the company, except that if this policy, after being in force three full years, shall lapse or become forfeited for the non-payment of any premium, paid-up policy will be issued, on demand made within six months after such lapse with the surrender of this policy, under the same conditions as this policy except as to payments of premiums, but without participation in profits, for an amount equal to as many fifteenth parts of the sum above insured as there shall have been complete annual premiums paid hereon when said default in the payment of premiums shall be made; and all right, claim or interest arising under statute, or otherwise to or in any other paid-up policy or surrender value, and to or in any temporary insurance, whether required or provided for by the statutes of any State, or not, is hereby expressly waived and relinquished."

The cause was tried upon an agreed statement of facts, the material parts of which are as follows:

"1.   That the defendant is a corporation, organized and existing under the laws of the State of New York as a mutual life insurance company, without capital stock, having its chief office in the city of New York, and was at the date of issuing the policy in question, and since has been and now is, engaged in the business of insuring lives through branch offices situated in the different States and territories of this country and certain foreign countries.

"2. That the defendant for many years past has main-
tained branch offices in the State of Missouri and has em-
ployed agents to solicit applications for insurance from citi-
zens of Missouri, and in the year 1887, as both prior and
subsequent thereto, defendant had received from the Super-
intendent of Insurance a certificate of authority to transact
business in said State.

"3. That during the year 1886 and prior to the issu-
ance of the policy sued upon, the amount of policies issued
by defendant to citizens of Missouri was $1,617,985, and the
amount of insurance in force on the lives of citizens of Mis-
souri on December 31, 1886, was $8,886,542, and the total
amount of policies issued by defendant in said year 1886 was
$85,178,294, and the total amount of policies in force on
December 31, 1886, issued by defendant, was $304,373,540.

"4. That on the second day of May, 1887, and long
prior thereto, John K. Cravens was a citizen of the State of
Missouri and resident of the county of Jackson in said State;
that on the said date and long prior thereto said John K.
Cravens was the husband of Fannie Cravens, the plaintiff
herein, and thereafter continued to be the husband of said
plaintiff, Fannie Cravens, until the time of his death.

"5. That the defendant in the transaction of its busi-
ness had adopted different forms of policies, embodying dif-
ferent and varying plans of insurance, all of them being on
the mutual plan; the premiums paid, less the expense of man-
agement, being administered solely for the benefit of the
policy holders, defendant having no capital stock.

"6. That on the second day of May, 1887, the local
agents of defendant solicited said John K. Cravens at his
residence in the county of Jackson and State of Missouri, to
insure his life in the defendant company, and submitted to
him the different plans of insurance then in use by said de-
fendant, and said John K. Cravens selected the plan known
as the non-forfeiting, limited tontine policy fifteen-year en-
dowment with limited premium return, and signed a written

VOL. 148 mo—38

application therefor and also signed the same in the name of the plaintiff, Fannie Cravens, as beneficiary of the policy to be issued thereunder, which said application is herewith filed . . . and made a part hereof as fully as if set forth herein. Said written application was thereupon delivered to defendant's agent at Kansas City, and was by him forwarded with the report of the medical examination of said Cravens, which said medical examination of said Cravens was made by the examiner of defendant company at Kansas City, in the State of Missouri, and by said agent forwarded to defendant's home office in the city of New York.

"7. That thereafter on the 10th day of May, 1887, said application and medical examination was received at the home office of the defendant in the city of New York, State of New York, and was there examined by the officers of defendant and on the 11th day of May said application and medical examination was accepted and approved, and the policy in suit, No. 250,213, was thereupon executed by the officers of said defendant at said home office, which said policy is herewith filed . . . and made a part hereof as fully as if set forth herein.

"8. That said policy was transmitted by defendant to its agents at Kansas City, in Jackson county, and on the 20th day of May, 1887, the policy was delivered to said Cravens, in the county of Jackson, in the State of Missouri, by said agent, and the first premium of $589.50 was paid by said Cravens, in the State of Missouri, to the said agent of defendant, and by said agent transmitted to defendant's home office.

"9. That said Cravens thereafter paid to defendant the premiums due upon said policy upon the 11th day of May, 1888, and on the 11th day of May, 1889, and on the 11th day of May, 1890, the amount of each of said premiums being received by the agent of the defendant from said Cravens at defendant's branch office in Kansas City, and transmitted to

defendant's home office, said agent delivering therefor to said Cravens receipts of defendant·signed by the chief officers of the company, and countersigned by said agent.

"10.   That default was made in the payment of the premium due, on the 11th day of May, 1891, and said premium has not been paid, and no subsequent premium has been paid.

"11.   That said John K. Cravens died in Kansas City, in the State of Missouri, on the second day of November, 1892, and thereafter, on the 30th day of November, 1892, proofs of death in due form as called for by the policy of insurance, were by Fannie Cravens made out and delivered to defendant and received by defendant.   A copy of said proofs of death is herewith filed   .   .   .   and made a part hereof as fully as if set forth herein.

"12.   That the amount of paid-up insurance to which the policy in suit, No. 250,213, was entitled according to the terms of the application and policy, was $2,670; that no demand for such paid-up policy was made by, or on behalf, of said Cravens within six months after default on May 11, 1891, or at any time; that defendant, upon the death of said Cravens, offered to waive the failure to make such demand, and tendered plaintiff, and still tenders, the amount of said policy, to wit, $2,670, which she declined and still declines to receive.

"13.   At the date of the issuance of said policy the only statute of the State of New York regulating, or in any way relating to the forfeiture of life insurance is that set forth in chapter 341 of the laws of 1876, of the State of New York, as amended by chapter 321 of the laws of 1877, of the said State, which said statutes may be referred to as if set forth in full herein.

"14.   The total number of policies issued during the year 1887 by defendant on the "non-forfeiting limited tontine policy plan, with fifteen years tontine period," constituting the same tontine class with policy No. 250,213, issued to the

residents of all the States and countries wherein defendant did business, was five thousand, one hundred and seventy-two (5,172), covering aggregate insurance in the sum of $20,154,981.

"15.   That said John K. Cravens, on the 11th day of May, 1891, was fifty-three years of age, and the term of temporary insurance procured at that date by three-fourths of the net value of the policy taken as a single premium for the amount written in the policy, was six years and forty-six days from the 11th day of May, 1891, making said policy, if subject to said extended insurance, in force at the date of the death of the said Cravens.

"16.   The amount which plaintiff claims under said policy is the face of the policy, to wit, $10,000, less the amount of unpaid premiums with interest thereon, leaving a balance claimed of $8,749.21, with interest thereon at the rate of six per cent per annum from the 30th day of November, 1892, and the defendant admits and offers to pay the aforementioned sum of $2,670, which the plaintiff declines to receive."

The several sections of the Revised Statutes of 1879, in force at the date of the policy sued on, and having any bearing upon the issues involved, are as follows:

"*Section 5983.   Policies non-forfeitable, when.*—No policy of insurance on life hereafter issued by any life insurance company, authorized to do business in this State, on and after the first day of August, A. D. 1879, shall, after payment upon it of two full annual premiums be forfeited or become void, by reason of the non-payment of premiums thereon, but it shall be subject to the following rules of commutation, to wit:   The net value of the policy, when the premium becomes due and is not paid, shall be computed upon the American experience table of mortality, with four and one-half per cent interest per annum, and after deducting from three-fourths of such net value any notes or other indebtedness to the company, given on account of past premium

payments on said policy issued to the insured, which indebtedness shall then be canceled, the balance shall be taken as a net single premium for temporary insurance for the full amount written in the policy, and the term for which such temporary insurance shall be in force shall be determined by the age of the person whose life is insured at the time of default of premium and the assumption of mortality and interest aforesaid; but if the policy shall be an endowment, payable at a certain time or at death, if it should occur previously, then if what remains as aforesaid, shall exceed the net single premium of temporary insurance for the remainder of the endowment term for the full amount of the policy, such excess shall be considered as a net single premium for a pure endowment of so much as such premium will purchase, determined by the age of the insured at date of defaulting the payment of the premium on the original policy, and the table of mortality and interest as aforesaid, which amount shall be paid at the end of the original term of endowment, if the insured shall then be alive.

"*Section 5984. A paid up policy may be demanded, when.*—At any time after the payment of two or more full annual premiums, and not later than sixty days from the beginning of the extended insurance provided in the preceding section, the legal holder of the policy may demand of the company, and the company shall issue its paid-up policy, which, in case of an ordinary life policy, shall be for such an amount as the net value of the original policy at the age and date of lapse, computed according to the American experience table of mortality, with interest at the rate of four and one-half per cent per annum, without deduction of indebtedness on account of said policy, will purchase applied as a single premium upon the table rates of the company; and in case of a limited payment life policy, or of a continued payment endowment policy payable at a certain time, or death, it shall be for an amount bearing such proportion to the amount of

the original policy as the number of complete annual premiums, actually paid, shall bear to the number of such annual premiums stipulated to be paid: Provided, that from such amount the company shall have the right to deduct the net reversionary value of all indebtedness to the company on account of such policy; and provided further, that the policy holder shall, at the time of making demand for such paid-up policy, surrender the original policy legally discharged at the parent office of the company.

"*Section 5985. ,Rule of payment on commuted policy.* If the death of the insured occur within the term of temporary insurance covered by the value of the policy as determined in section 5983, and if no condition of the insurance other than the payment of premiums shall have been violated by the insured, the company shall be bound to pay the amount of the policy, the same as if there had been no default in payment of premium, anything in the policy to the contrary notwithstanding: Provided, however, that notice of the claim and proof of the death shall be submitted to the company in the same manner as provided by the terms of the policy within ninety days after the decease of the insured; and provided also, that the company shall have the right to deduct from the amount insured in the policy the amount compounded at six per cent interest per annum, of all the premiums that had been forborne at the time of the decease, including the whole of the year's premium in which the death occurs, but such premiums shall in no case exceed the ordinary life premium for the age at issue, with interest as last aforesaid.

"*Section 5986. The foregoing provisions not applicable, when.*—The three preceding sections shall not be applicable in the following cases, to wit: If the policy shall contain a provision for an unconditional cash surrender value at least equal to the net single premium for the temporary insurance provided hereinbefore; or for the unconditional commutation

of the policy to non-forfeitable paid up insurance for which the net value shall be equal to that provided for in section 5984; or if the legal holder of the policy shall, within sixty days after default of premium, surrender the policy and accept from the company another form of policy; or if the policy shall be surrendered to the company for a consideration adequate in the judgment of the legal holder thereof, then, and in any of the foregoing cases, this act shall not be applicable."

The plaintiff contends' that the contract of insurance which forms the basis of this suit is a Missouri contract, and must be governed by its laws, notwithstanding the defendant is a corporation incorporated under the laws of the State of New York, has its chief office there, and that the contract provides that the contract contained in the policy and application shall be construed according to the laws of the State of New York, the place of said contract being agreed to be the home office of said company in the city of New York. This contention is predicated not only on the fact that the contract also provides "that under no circumstances shall the policy hereby applied for be in force until the actual payment to and acceptance of the premiums by the company or its authorized agent during the lifetime and good health of the person on whose life insurance is applied for," but upon the further fact that the application was by defendant's agent in Kansas City, Missouri, transmitted to defendant at its home office in said city, upon receipt of which the company issued the policy containing the clause quoted, sent the same to its agent at Kansas City, who afterwards delivered the policy to the insured in Missouri and then and there received the first premium.

However perfect in form the contract may have been and although all of its other terms and conditions may have been complied with, payment of the premium during the life and good health of the assured and delivery of the contract

to him were conditions precedent in order to complete its execution, and as the premiums were paid and the policy delivered to the assured in this State, it must follow that the contract was executed here.

Equitable Life Assur. Soc. v. Clements, 140 U. S. 226, was a suit upon a life insurance policy executed in New York by a corporation of that State doing business in this State, upon an application signed in this State by one of its residents, and made part of the contract, which provided that it should not take effect until the first premium was actually paid during the life of the person proposed for insurance, and which was delivered and the first premium paid in Missouri, and it was held in the absence of evidence of the company's acceptance of the application in New York, to be a Missouri contract and governed by the laws of Missouri.

In Hicks v. National Life Ins. Co., 60 Fed. Rep. 692, it is said: "If any authority were needed for the proposition that a policy applied for in New York, delivered there, and the premiums paid there, is a New York contract, notwithstanding it is signed and issued by the insurer in another State, the reference is supplied by the case of Assur. Soc. v. Clements, 140 U. S. 226. The delivery of the policies in the present case was made in New York City to an agent of the assured and in legal effect was as if the assured had been personally present and received them. Then and not before the policies took effect."

In Northwestern Mut. Life Ins. Co. v. Elliott, 5 Fed. Rep. 225, an application for a policy was made at Portland, Oregon, to the company's agent, who forwarded the same to the company at Milwaukee, Wisconsin. The company thereupon, in Wisconsin, issued its policy, containing a clause, viz.: "This policy shall not take effect and become binding on the company until the premium shall be actually paid during the lifetime of the person whose life is assured, to the company or some person authorized to receive it, who

shall countersign the policy on receipt of the premium," and transmitted the same to its agent at Portland, Oregon, who there delivered it to the insured.    The court said: "Where, then, was this contract made, in Wisconsin or Oregon?   The answer to this question involves the inquiry, where did the final act take place which made the transaction a contract binding on the parties?   The premium was paid to the agent of the plaintiff at Portland, who then and there countersigned and delivered the policy.    This was the consummation and completion of the contract.    But, to put this beyond a doubt, the policy itself declares that it shall not be binding on the company until these acts are performed.    And, until it was binding on the company it was not binding on the applicant; in short it was not yet a contract, but only a proposition." [Pomeroy v. Manhattan Life Ins. Co., 40 Ill. 400; Thwing v. Great Western Ins. Co., 111 Mass. 109; Wood F. Ins., 189, note 2; Hardie v. St. Louis Mut. Life Ins. Co., 26 La. Ann. 242; St. Louis Mut. Life Ins. Co. v. Kennedy, 6 Bush. 450.]

In Fletcher v. New York Life Ins. Co., 13 Fed. Rep. 526, the policy was delivered in Missouri, to a citizen of Missouri, and the first premium there paid.    The court said: "The defendant company was doing business in Missouri, with the privileges granted to it here, when said insurance was effected.    It may be that the formal acceptance of the proposed contract was by the letter of the contract, to be consummated in New York.    The broad proposition, however, remains, no artifice to avoid which can be upheld.    The statutes of Missouri, for salutary reasons, permit foreign corporations to do business in the State on prescribed conditions. If, despite such conditions, they can by the insertion of clauses in their policies withdraw themselves from the limitations of the Missouri statutes, while obtaining all the advantages of its license, then a foreign corporation can by special contract, upset the statutes of the State and become exempt from the requirements of law.    Such a proposition

is not to be countenanced. The defendant corporation chose to embark in business within this State, under the terms and conditions named in the statute. It could not by paper contrivances, however specious, withdraw itself from the operation of the laws, by force of which it could alone do business within the State. To hold otherwise would be subversive of the right of a State to decide on what terms, by comity, a foreign corporation should be admitted to do business or be recognized therefor within the State jurisdiction. Each State can decide for itself whether a foreign corporation shall be recognized by it, and on what terms. Primarily, a corporation has no existence beyond the territorial limits of the State creating it, and when it undertakes business beyond, it does so only by comity. The defendant corporation having been permitted to do business in Missouri, under the statutes of the latter, was bound by all the provisions of those statutes, and could not, by the insertion of any of the many clauses in its forms of application, etc., withdraw itself from the obligatory force of the statute. The contract of insurance, therefore, is a Missouri contract, and subject to the local law."

In the case of Wall v. Equitable Life Assur. Soc., 32 Fed. Rep. 275, it was said: "The defendant is a New York corporation doing business in the State of Missouri; the insured was a citizen and resident of Missouri, and made his application here, which was forwarded to New York; the application was accepted, the policy fully prepared and signed in that State, and sent to Missouri, and delivered to the applicant here. By the terms of the policy, all premiums are payable at the defendant's office in New York. If the sum insured should become payable, the payment is to be made at its office in New York. . . . Under these facts, I have little doubt as to the true answer to be made to this first question, viz.: 'Is the contract sued on governed and to be construed by the laws of the State of New York, or by the laws

of the State of Missouri?' In White v. Insurance Company, 4 Dill. 177, it was held that the act of the legislature of the State of Missouri, March 23, 1874, in respect to policies of life insurance extends to all policies of life insurance delivered in this State after the act went into effect. That was a suit against a foreign insurance company doing business in the State. In Fletcher v. Ins. Co., 13 Fed. Rep. 526, it was held that a foreign insurance company can not withdraw itself from the operation of the statute of a State in which it does business, by the insertion of clauses in its policies. That was a case in which the defendant company insisted that, by virtue of certain clauses in the application, the contract was to be finally and fully executed in New York. In his opinion, an opinion concurred in by Circuit Judge McCrary, Judge Treat uses this language: 'The defendant corporation, having been permitted to do business in Missouri, under the statutes of the latter, was bound by all the provisions of those statutes, and could not, by the insertion of any of the many clauses of its forms of applications, withdraw itself from the obligatory force of the statute. The contract of insurance, therefore, is a Missouri contract and subject to the local law.' . . . . In view of these authorities and considering the reason of Judge Treat in the opinion above referred to I deem it unnecessary to discuss the question further, and simply hold that the Missouri statute controls." This case was affirmed in the United States Supreme Court.

The same rule is announced in Equitable Life Assur. Soc. v. Winning, 58 Fed. Rep. 541; Berry v. Knights Templars' and Masons' Life Indemnity Company, 46 Fed. Rep. 439; and in Price v. The Connecticut Mutual Life Ins. Co., 48 Mo. App. 281.

It is true that there was no express provision in the contract which formed the basis of the Clements suit *supra,* as there is in the case at bar with respect to the State by whose laws the contract should be construed, or as to the

place of contract; but defendant was at the time of the execution of the contract doing business in this State *ex gratia,* and could not with respect to such business evade the statute of this State or withdraw itself from its operation by the insertion of clauses in the policy. [Fletcher v. Ins. Co., *supra;* Wall v. Equitable Life Assurance Co., *supra.*]

In Price v. Ins. Co., *supra,* it is said: "Where an insurance company does business in this State, and issues its policies to residents of this State, the validity of clauses in its policies must be determined by the laws of this State. The laws of this State establish a rule of public policy, which overrides the freedom of contract of the parties, and makes waiver of statutory provisions ineffectual, although such waivers are contained in the strongest terms in the policies."

Foreign insurance companies which do business in this State, do so not by right but by grace, and must in so doing conform to its laws; they can not avail themselves of its benefits, without bearing its burdens. Moreover the State may prescribe conditions upon which it will permit foreign insurance companies to transact business within its borders or exclude them altogether and in so doing violates no contractual rights of the company. [State v. Stone, 118 Mo. 388; Daggs v. Ins. Co., 136 Mo. 382; s. c., 172 U. S. 557.]

It is therefore concluded that the contract is a Missouri contract and governed by the laws of this State.

Being a Missouri contract the statute then in force with respect to the subject-matter of the contract entered into, and became part thereof, as much so as if copied therein. [State to use of Wolff v. Berning, 74 Mo. 87; Reed v. Painter, 129 Mo. loc. cit. 680; Havens v. Germania Fire Ins. Co., 123 Mo. 403; White v. Ins. Co., 4 Dill. 177.]

The question then is, could the parties themselves enter into a contract, either directly or indirectly waiving the provisions of the statutes?

It was held in Equitable Life Assurance Society v. Clements, *supra*, that sections 5983, 5986, *supra*, established a rule of commutation upon default in payment of premiums after two premiums have been paid on a policy of life insurance, which could not be raised or waived by express provision in the contract, except in the cases specified in those statutes.     The court said:     "The manifest object of this statute, as of many statutes regulating the form of policies of insurance on lives or against fires, is to prevent insurance companies from inserting in their policies conditions of forfeiture or restriction, except so far as the statute permits. The statute is not directory only, or subject to be set aside by the company with the consent of the assured; but it is mandatory, and controls the nature and terms of the contract into which the company may induce the assured to enter. This clearly appears from the unequivocal words of command and of prohibition above quoted, by which, in section 5983, 'no policy of insurance,' issued by any life insurance company authorized to do business in this State, 'shall, after the payment of two full annual premiums, be forfeited or become void by reason of the non-payment of premium thereon, but it shall be subject to the following rules of commutation,' and in section 5985, that if the assured dies within the term of temporary insurance, as determined in the former section, 'the company shall be bound to pay the amount of the policy,' 'anything in the policy to the contrary notwithstanding.'     This construction is put beyond doubt by section 5986, which by specifying four cases (two of which relate to the form of the policy), in which the three preceding sections 'shall not be applicable,' necessarily implies that those sections shall control all cases not so specified, whatever be the form of the policy. . . . . It follows that the insertion in the policy of a provision for a different rule of commutation from that prescribed by the statute, in case of default of payment of premium after three premiums

have been paid; as well as the insertion in the application of a clause by which the beneficiary purports to 'waive and relinquish all right or claim to any other surrender value than that so provided, whether required by a statute of any State or not,' is an ineffectual attempt to evade and nullify the clear words of the statute."

The recent case of the Equitable Life Assur. Soc. v. Nixon, 81 Fed. Rep. 796, was a suit upon a policy issued by the company, a corporation of the State of New York, and doing business in the then territory of Washington. The assured paid all premiums that accrued prior to July 14,1890, according to the terms of the policy, but.made default in the payment of the premium which fell due on that day in consequence of which the corporation insisted that the policy was rendered void. The court observed: "That depends upon whether the contract is to be regarded as a Washington or a New York contract; for there is no statute of Washington affecting that provision of the policy which declares that, 'if any premium or instalment of a premium on this policy shall not be paid when due, this policy shall be void.' In the State of New York there is such a statute, and hence the principal question in the case is whether the policy in suit was a New York contract, and to be ruled in accordance with the statute of that State, or to be governed by the principles of the common law, which are in force in Washington in respect to such contracts of insurance. We think it clear that the policy in question was a New York contract. . . . It would seem to be very clear, therefore, that the rights and obligations of the respective parties are to be measured and controlled by the laws of that State, subject, perhaps, to any additional limitations or conditions imposed by the statutes of the State (then territory) into which the defendant corporation went to solicit the business in question; for it may be true that every foreign corporation that enters a State other than that of its creation, and there transacts business, does so in subordination to the

statutes of the State permitting its entry therein, and that no business transacted by virtue of the privilege thus conferred can, by any sort of contract, be removed from the operation of the statutes of the State permitting the business to be transacted. But in the present case, as has been said, there is no Washington statute affecting that portion of the policy here in question."

It is manifest from this decision that if the statutes of Washington had prohibited the forfeiture of the policy upon the ground of the non-payment of premiums when due, as do the statutes of this State, that the conclusion reached would have been different.

The rule to be deduced from the authorities seems to be, that when no statute intervenes prohibiting it, a corporation doing business by permission in another State from that of its incorporation may by contract make the law of the State of its incorporation the applicatory law of the contract, but that where the laws of the State in which it does business by license prohibits such corporations from making certain kinds of contracts, they can only act in accordance therewith.

As the non-forfeiture clause in section 5983, does not come within the exceptions specified in section 5986, it would seem that the provision in the policy with respect to its forfeiture or lapse after being in force three full years by the non-payment of premiums, is void and of no effect, and that such statutory provision can not be waived.

While defendant does not concede that the policy in suit can upon any theory be held subject to the statutes of this State, it is insisted that the facts of this case bring the policy within the exception provided by section 5986, as the unconditional commutation paid-up insurance provided therein was equal at the time of default to that provided by section 5984, of the statutes, and the provision for extended insurance by the express terms of the statute was, therefore, not applicable.

By the provisions of section 5986, *supra,* the three preceding sections are made inapplicable in case the policy shall contain a provision for an unconditional cash surrender value at least equal to the net single premium for the temporary insurance therefor provided therein, or for the unconditional commutation of the policy to non-forfeitable paid-up insurance, for which the net value shall be equal to that provided for in section 5984.

The policy was a fifteen-year payment life. It provided that in the event of default after being in force three full years "a paid-up policy will be issued on demand made within six months after such lapse, with surrender of this policy under the same conditions as this policy except as to payment of premiums, but without participation in profits, for an amount equal to as many fifteenth parts of the sum above insured, as there shall have been complete annual payments paid thereon, when said default in the payment of premiums shall be made."

The provision with respect to a paid-up policy provided by section 5984 of the statute, is as follows: "That on demand made within sixty days of default the company shall issue its paid-up policy which  .  .  .  in case of a limited payment life policy or of a continued payment endowment policy, payable at a certain time or at death, shall be for an amount bearing such a proportion to the amount of the original policy, as the number of complete annual premiums actually paid shall bear the number of such annual payments stipulated to be paid" (also providing for the deduction of indebtedness, and the surrender of the original policy).

It is argued that this comparison of the statute with the policy must obviously be made at the date of default, when the right of the insured to the benefit of his reserve matures. And as at this date, May, 1891, Mr. Cravens had paid four premiums, he was entitled to a commutation to

paid-up insurance of the precise amount fixed by section 5984. That the method of computation is identical, and therefore the value of the paid-up policy to which the insured was entitled at the time of the default on making demand thereof was precisely what he was entitled to under the statute. That it is immaterial under the policy that he had six months in which to make his demand, and under the statute only sixty days, or that he failed to make demand of the company for a paid-up policy, and that the company waived this failure, as the comparison must be made at the date of default as his rights under the policy became fixed at that time.

We are however inclined to a different view, and that this policy does not come within the provisions of, and is not governed or affected by section 5984.

This section we think has reference solely to paid-up policies and gives the holder of a policy who is entitled to extended insurance under section 5983, the right to compel the company within a limited time from the beginning of such extended insurance, to convert the extended insurance into a paid-up policy of a prescribed value, if he so desire, but that this right ceases at the expiration of sixty days from the date that the unpaid premium becomes due, and if no demand be made within that time the right to paid-up insurance no longer exists. No demand for paid-up insurance was made in this case and this section can not be considered as controlling the rights of the parties to this action. Section 5986 exempts from the control of sections 5983, 5984 and 5985, policies of insurance which contain a provision for an unconditional cash surrender of a fixed minimum amount, and policies which contain a provision for unconditional commutation to non-forfeitable paid-up insurance of a fixed minimum amount and also exempts from the control of said sections cases wherein the holder of the

policy shall within sixty days after default is made in the payment of the premium, surrender the policy and accept from the company another form of policy, or such consideration as the holder of the policy may be entitled to under it.

This policy contains no provision for a cash surrender value, nor has anything been done by its holder to bring it within either of the two exempted cases.

The question then arises, does the policy provide for its own unconditional commutation to non-forfeitable, paid-up insurance? The policy contains this provision:

"That if the premiums are not paid as heretofore provided, on or before the days when due, then this policy shall become void and all payments previously made shall be forfeited to the company, except that . . . if this policy, after being in force three full years, shall lapse or become forfeited for the non-payment of any premium, a paid-up policy will be issued on demand, made within six months after such lapse, with surrender of this policy," etc.

There can be no question but that it was a condition precedent to the right of the holder of the policy in question after it lapsed for the non-payment of premiums to a paid-up policy, that demand be made therefor, with surrender of the policy, within six months after the policy lapse and no such demand could be waived by defendant, so as to effect plaintiff's rights.

Hanthorne v. Brooklyn Life Ins. Co., 5 Mo. App. 73, was a suit in equity to enforce specific performance of a contract of life insurance. The policy contained the following clause: "After two annual payments, should the party wish to discontinue (notice to the company being given before the net premium becomes due), the company will issue a paid-up policy for as many tenths of the amount originally assured as there have been annual premiums paid in cash." The assured paid more than two annual premiums.

On December 28, 1871, another premium became due which he failed to pay. In January, 1872, he notified the company that he wanted to discontinue his policy, and demanded a paid-up policy, which the company refused to issue, upon the ground that the assured had failed to comply with the conditions in the provision of the policy quoted. It was held that by an express term of the policy the defendant had a right to notice before the then next premium became due of the assured's wish to discontinue and to demand a paid-up policy, which was a condition precedent to his right thereto, and in the absence of such notice he was not entitled to recover.

Knapp v. Homeopathic Life Ins. Co., 117 U. S. 411, was a suit upon a policy of life insurance which provided, "that unless this policy shall be surrendered and such paid-up policy shall be applied for within ninety days after such non-payment as aforesaid, then this policy shall be void, and of non-effect," and it was held that the surrender of the policy, and the application for a paid-up policy within ninety days after non-payment of the premium were conditions precedent to plaintiff's right to recover.

The same rule is announced with respect to policies containing similar provisions in the following cases: Sheerer v. Manhattan Life Ins. Co., 16 Fed. Rep. 720; Northwestern Mutual Life Ins. Co. v. Barbour, 92 Ky. 427; Hudson v. Knickerbocker Life Ins. Co., 28 N. J. Equity, 167; Coffey v. Universal Life Ins. Co., 10 Bissell, 354.

Price v. The Connecticut Life Ins. Co., *supra,* was a suit upon a life insurance policy containing this provision, viz.: "If, after the payment of two or more annual premiums as above, any subsequent premium or instalment of premium be not paid when due, said company do thereupon and thereafter, and upon the same consideration hereinbefore set forth, but without further payment of premiums, insure said life for said term, but only in a sum to be ascertained by the

table of paid-up insurance indorsed herein, and hereby made a part of this contract, such sum to be payable at the time and place and in the manner and to the persons above named." In that case the assured died after having made two full annual premiums on said policy. The last instalment was paid March 4, 1888. The administrator of the assured claimed that the policy at the date of the payment of the last instalment of premiums had acquired a net value of eighty dollars to be computed according to the terms of the policy, and that three-fourths of such net value, taken and applied as a net single premium for temporary insurance for the full amount written in the policy, entitled the insured to temporary insurance for $2,000 for a term expiring March 4, 1889, and brought suit for that sum. The defendant company resisted the recovery on the ground that the value of the policy, and the amount which the representatives of the assured were entitled to recover thereunder, must be determined by the terms of the contract between the assured and the company, and not by the provisions of ths statute of the State of Missouri, the provisions of which were expressly waived by the parties, and were inapplicable under the exceptions made by section 5986. As there had been paid more than two full annual premiums on the policy plaintiff claimed temporary insurance under section 5983, but the court held that the clause in the policy quoted provided for the unconditional commutation of the policy to non-forfeitable paid-up insurance; that the policy came within the second exception of section 5986 and that plaintiff was entitled to paid-up insurance, according to the terms of the policy, and not to temporary insurance under the provisions of section 5983. It does not appear that the policy in suit in that case required that a demand for a paid-up policy be made on the company at any time before it would agree to issue such a policy, in which event plaintiff's policy would

have been a conditional one, and would have entitled the holder to temporary insurance for the face of the policy under section 5983. .

But in the case at bar the policy required that demand be made for a paid-up policy within six months after default in the payment of premium, before the holder was entitled to a paid-up policy. Whether the holder would exercise that right or not, was discretionary with him; and not for defendant to decide for him. It follows that the policy in suit is not governed by section 5986.

It is however controlled by sections 5983 and 5985.

By section 5983, three-fourths of the net reserve is applied on the policy as a single premium which continues the full amount of the policy in force and then prescribes a rule for fixing the term for which such temporary insurance shall be in force.

By section 5985, it is provided that if the death of the assured occur within the term of temporary insurance covered by the policy the company shall be bound to pay the amount of the policy less the unpaid premiums with compound interest thereon at six per cent.

The policy was a fifteen-year endowment issued May 11, 1887, for $10,000; age of the assured at that time was forty-nine years. Four annual premiums of $589.50, were paid on it, default being made in the payment of the premium which fell due May 11, 1891. Its net value based upon American Experience Table of Mortality with interest at four and one-half per cent at the date of default in payment of premium, was $1,957.21. Under section 5983 of the Revised Statutes of 1879 three-fourths of the net value, or $1,467.91, is applied as a single premium for temporary insurance at the attained age of the insured at the time of default in payment of premium.

The insured at time of default in premium in this case being fifty-three years old, and the amount to be applied as a

single premium for temporary insurance, $1,467.91, the insurance is in force for a period of nine years and seventy-one days from the date of lapse, May 11, 1891, and upon this basis plaintiff is entitled to recover.

It is well settled that the legislature of the State has the power to pass laws regulating, and prescribing rules by which foreign insurance companies may do business in this State, and to prohibit them from doing so altogether if so inclined. [Paul v.Virginia, 8 Wall. 168; State v. Stone, *supra;* Hooper v. California, 155 U. S. 648; Daggs v. Insurance Co., *supra.*] This case has recently been affirmed by the Supreme Court of the United States.

It logically follows that in passing the sections of the statute quoted the legislature did not exceed the powers conferred upon it by the State Constitution, and that such legislation is not in conflict with any provision of the Constitution of the United States.

For these considerations. we reverse the judgment and remand the case with directions to the court below to enter up judgment for plaintiff in accordance with the views herein expressed.

GANTT, C. J., SHERWOOD, BRACE, ROBINSON, JJ., concur; MARSHALL, J., absent; VALLIANT, J., not sitting.