DAVID PRICE, Administrator of the Estate of JAMES E. PRICE, Deceased, Appellant, v. CONNECTICUT MUTUAL LIFE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, Respondent.

St. Louis Court of Appeals, February 23, 1892.

1. Life Insurance.: FORFEITURE OF POLICY FOR NON-PAYMENT OF PREMIUMS: VALIDITY OF PROVISIONS OF POLICY. When a life-insurance company does business and issues policies in this state to residents thereof, the validity of the provisions of the policies in regard to forfeiture for non-payment of premium must be determined in conformity with our statutes, which override the freedom of the parties to contract and make ineffectual a waiver of their effect, in whatever terms such waiver may be expressed.

2. ———— : ————. If the provisions of a policy of life insurance, in case of a default in the payment of a premium after two full annual premiums have been paid, entitle the insured to the unconditional commutation of the insurance effected by it into non-forfeitable insurance of a value equal to or greater than that prescribed by the statute in such case, that statute has no application.

3.  Evidence : JUDICIAL NOTICE: SCIENTIFIC INFORMATION.  The rule,. that courts will take judicial notice of ordinary mathematical' propositions, as well as of scientific facts which universal experi- ence has rendered axiomatic, is not applicable to the ascertain- ment of the present net value of a life-insurance policy, depending partly on extraneous facts and partly on the accuracy of an intricate computation.

4.  ———: EXPERT EVIDENCE.  In such a case expert evidence is. admissible, and, while such evidence is merely advisory, it cannot be rejected, unless it proves itself unworthy of credit on the application of simple mathematical tests.

5.  Practice, Appellate : WEIGHING THE EVIDENCE.  This court will not weigh conflicting evidence in an action at law tried by the trial court sitting as a jury, and this rule applies to a judgment based upon expert evidence, which cannot be rejected as a matter of law.

*Appeal from the Hannibal Court of Common Pleas.*
HON. THOS. H. BACON, Judge.

AFFIRMED.

*Harrison & Mahan*, for appellant.

*Lee & Ellis*, for respondent.

ROMBAUER, P. J.—The decedent, James E. Price, then a resident of the city of Hannibal in the state of Missouri, made his written application for insurance in the city of Hannibal, which was forwarded to the defendant in Hartford, Connecticut; the application was accepted, the policy prepared and signed at Hartford, and sent to Missouri, and delivered to the appellant Price in the city of Hannibal.

The defendant corporation is organized under the laws of Connecticut, and by its charter and the laws of that state is fully authorized to make the contract, which it did make according to the written terms of the policy in question.  It was at the time engaged and is still engaged in doing a life-insurance business in the state of Missouri, and is and was legally authorized to do such business by the laws of the latter state.

The application of the decedent, on which the policy which is the foundation of the present action was issued, contained the following clause: "It is agreed that the policy hereby applied for shall, if granted, be held to be issued and delivered at Hartford, in the state of Connecticut, and it shall be in all respects construed and determined in accordance with the laws of that state; and that the provisions in said policy for its continuance, as paid-up insurance for a specific amount in case of failure to pay premiums, are and shall be in substitution and in waiver of the rights of all parties hereto, under any law of any state, relating to the lapse or forfeiture of policies of life insurance."

The policy itself contains this clause: "If, after the payment of two or more annual premiums as above, any subsequent premium or installment of premium be not paid when due, said company do thereupon and thereafter and upon the same consideration hereinbefore set forth, but without further payment of premiums, insure said life for said term, but only in a sum to be ascertained by the table of paid-up insurance indorsed herein, and hereby made a part of this contract, such sum to be payable at the time and place and in the manner and to the persons above named; and it is agreed by all the parties hereto that this provision is and shall be in substitution for and in waiver of their several rights under any law of any state relating to the lapse or forfeiture of policies of life insurance."

A written contract signed by the assured is annexed to the policy, and contains the following clauses among others:

"This policy is issued and accepted upon the following express conditions and agreements referred to on the first page and made part of this contract: *First.* That this contract of insurance is wholly expressed in this policy and the application therefor, which is the

basis of and part of said contract, and a copy whereof is hereto annexed.  *  *  *

"To ascertain the amount for which this policy will continue in force after two or more annual premiums have been paid, multiply the amount opposite the figures showing the number of annual premiums, or of semi-annual installments paid, by the number of thousands of dollars insured by this policy.  *  *  *

"If the annual premium is paid in quarterly installments, the amount for which this policy will continue in force will be increased by the payment of quarterly installments by one-half the increase due to the payment of a semi-annual installment, less fractions of a dollar."

The contract thus made part of the policy gives in detail the mode of the computation, illustrated by a tabular statement.

James E. Price died in Missouri on June 7, 1888, having paid in his lifetime two full annual premiums on said policy in quarterly installments. The last installment was paid March 4, 1888. The administrator of Price, claiming that the policy at the date of the payment of the last installment of premiums had acquired a net value of $80 computed upon the American experience table of mortality at four and one-half-per-cent. interest per annum, and that three-fourths of such net value, taken and applied as a net single premium for temporary insurance for the full amount written in the policy, entitled the insured to temporary insurance for $2,000 for a term expiring March 4, 1889, brings this action to recover that sum. The defendant company resists the recovery on the ground that the value of the policy, and the amount which the representatives of the assured are entitled to recover thereunder, must be determined by the terms of the contract between the assured and the company, and not by the provisions of the statute of the state of Missouri, the provisions of which are expressly waived by

the parties, and are inapplicable under the exceptions made by section 5986.

Upon a trial of the cause by the court without a jury, the plaintiff recovered a judgment for $154, being the amount which the court found the plaintiff was entitled to recover, if the terms of the policy determined the extent of the recovery. The plaintiff appeals and assigns for error that this judgment is erroneous as a matter of law, and that the plaintiff was entitled to recover the full amount of the policy under the admitted facts and under the provisions of sections 5983 and 5985 of the Revised Statutes of 1879 of the state of Missouri. To this the defendant replies that such provisions have been expressly waived by the contract between the parties, but that, even conceding that they could not be waived on account of a supposed rule of public policy on the subject which overrides the terms of the written contract between the parties, yet the policy in question is clearly within the provisions of section 5986 of the same statute, and hence the preceding sections have no application thereto.

The sections of the statute relied on by the parties respectively, as far as they affect this case, are as follows:

"Sec. 5983. No policy of insurance on life hereafter issued by any life insurance company authorized to do business in this state, on and after the first day of August, A. D. 1879, shall, after payment upon it of two full annual premiums, be forfeited or become void by reason of the non-payment of premium thereon, but it shall be subject to the following rules of commutation, to-wit: The net value of the policy, when the premium becomes due and is not paid, shall be computed upon the American experien.:e table of mortality, with four and one-half-per-cent. interest per annum, and  *  *  * shall be taken as a net single premium for temporary insurance for the full amount written in the policy, and the term for which such temporary insurance shall be in

force shall be determined by the age of the person whose life is insured at the time of default of premium and the assumption of mortality and interest aforesaid. * * *

"Sec. 5984. At any time after the payment of two or more full annual premiums, and not later than sixty days from the beginning of the extended insurance provided in the preceding section, the legal holder of the policy may demand of the company, and the company shall issue, its paid-up policy, which, in case of an ordinary life policy, shall be for such an amount as the net value of the original policy at the age and date of lapse, computed according to the American experience table of mortality, with interest at the rate of four and one-half per cent. per annum, without deduction of indebtedness on account of said policy, will purchase, applied as a single premium, upon the table rates of the company; and in case of a limited payment life policy, or of a continued payment endowment policy payable at a certain time, or at death, it shall be for an amount bearing such proportion to the amount of the original policy as the number of complete annual premiums, actually paid, shall bear to the number of such annual premiums stipulated to be paid; provided, that from such amount the company shall have the right to deduct the net reversionary value of all indebtedness to the company on account of such policy. * * *

"Sec. 5985. If the death of the insured occur within the term of temporary insurance covered by the value of the policy, as determined in section five thousand, nine hundred and eighty-three, and if no condition of the insurance other than the payment of premiums shall have been violated by the insured, the company shall be bound to pay the amount of the policy, the same as if there had been no default in the payment of premium, anything in the policy to the contrary notwithstanding. * * *

"Sec. 5986. The three preceding sections shall not be applicable in the following cases, to-wit: If the policy shall contain a provision for an unconditional cash surrender value at least equal to the net single premium for the temporary insurance provided hereinbefore, *or for the unconditional commutation of the policy to non-forfeitable, paid-up insurance for which the net value shall be equal to that provided for in section five thousand, nine hundred and eighty-four.*"    *    *    * (The italics are our own).

In order to show that the policy in suit did contain a provision for the unconditional commutation of the policy to non-forfeitable, paid-up insurance, for which the net value shall be equal to that provided for in section 5984, the defendant called Augustus F. Harvey, who stated that he was the actuary of the insurance department of the state of Missouri; that he had been engaged in that business twenty odd years; had been in the department since February, 1870, and that during that time he had been constantly engaged in actuarial work; that he was familiar with all kinds of actuarial work of life insurance, and knew nearly all of the methods; that it was his business to make valuations of policies in the office in which he was employed; that the insurance department of Missouri has charge of all the insurance companies doing business in the state, and it has been a part of the business of the office to examine the insurance companies and put the values upon their policies, from 1870 to 1874, during which time they valued all the policies, and that a general valuation was made every five years; and they were all valued in 1879, and again in 1884, and that since that time they have valued them every year.

Witness was here handed the policy of insurance sued on in this action, and asked to state what kind of a policy it is, to which he made answers as follows: "*A.* A whole life policy of insurance, to be paid for by premiums running through a period of

twenty years; it is what is known as a self-acting, uncon-ditional, commutative policy.

"*Q.* Will you look at the policy again and state what was the value of that policy? *A.* There is noth-ing here which gives me the value. I have a memor-andum giving the value of policies, and according to the terms of this policy it is $56.

"*Q.* State how you arrived at that estimate. *A.* The value of a policy is the difference between the pres-ent value and the single premiums for the benefit, which is $2,000, and the present value of the future premiums, that is, the value of the policy, and that in this case is $56.

"*Q.* Now what is three-fourths of that? *A.* $42. I would say that this is based upon the American expe-rience table of mortality at four and one-half-per-cent. interest.

"*Q.* If the premium had ceased on the policy, ceased to be paid after nine quarterly premiums had been paid, what would have been the unconditional, uncontrovertible, commuted, paid-up insurance, guar-anteed by the policy itself? *A.* $154 by the table on the back of the policy.

"*Q.* What is the value of this $154 paid-up whole life policy? *A.* $42.46 paid up.

"*Q.* What is that valuation based upon? *A.* On the American experience table of mortality, at four and one-half-per-cent. interest.

"*Q.* What do you mean when you say the value of the policy? What do you mean by that expression? *A.* I mean in this connection it is the least amount of money which the law of Missouri requires the company to have on hand to carry the policy during its future existence.

"*Q.* Now, are you able to state what is the value the defendant company has placed upon that policy in the table? *A.* The value of the policy.

"*Q.* Do you know what standard of reserve this defendant company shows on its policies? *A.* I do.

"*Q.* What is it? *A.* The American experience table of mortality three-per-cent. interest.

"*Q.* Which is the most desirable policy? *A.* The three-per-cent. gives the larger values.

"*Q.* Takes more money to earn a certain sum at three per cent. than at four and four and one-half? *A.* Yes, sir.

"*Q.* What is the exact value of that policy at three per cent., the amount of cash the company has on hand at three per cent? *A.* On that policy, $61.67.

"*Q.* You say the value of that policy is $61.67? *A.* Yes, sir.

"*Q.* The value of it at the time there was a default in the payment of premiums? *A.* Yes, sir.

"*Q.* Is that a larger or smaller value than the value called for by the Missouri law which you have referred to? *A.* It is a larger value.

"*Q.* How much larger? *A.* The difference between $42.61 and $61.67,—$19.06.

"*Q.* In other words, you say the value of the policy, as stated there at $154, is greater than the statute calls for? *A.* Yes, sir; $19.06 more than the value of the policy as required by our laws.

"Cross-examination: *Q.* Mr. Harvey, you stated, I believe, that the net value of that policy on the fourth day of June, 1888, was $56? *A.* Yes, sir.

"*Q.* And that three quarters of that value was $42? *A.* Yes, sir, $42. That calculation is based upon the American experience table of mortality at four and one-half-per-cent. interest.

"*Q.* Now, state to the court what the premium is per year on this policy of $2,000, on a person, thirty-two years old. *A.* $65.24.

"*Q.* Now that carries a man, thirty-two years old, for one year, that $65.24? *A.* Yes, sir.

"*Q.* Now at the end of two years and a quarter there is a net value of that policy of $56 ? *A.* Yes, sir.

"*Q.* Three quarters of that is $42 ? *A.* Yes, sir.

"*Q.* How long will that $42 carry a man, thirty-two years and four months old, at the time of the default of this policy on the fourth day of June, 1888, under the terms of the policy ; how long will it carry him under the conditions of the policy ? *A.* Under the conditions of this policy the $2,000 cannot be carried at all beyond that term. But as soon as that day comes, and the premium is not paid, the contract provides that this policy shall then become a policy for $154, and it is not possible to carry the $2,000 beyond that point.

"*Q.* Now, I don't want you to make me a legal argument in favor of the insurance companies ; for what length of time would $42, being three-fourths of the net value of the policy on the fourth day of June, 1888, taken as a single premium for temporary insurance for the full amount written in that policy, carry the sum of $2,000 on the life of a man, say thirty-two years, four months old, from the day of default, to-wit, June 4, 1888 ? *A.* Excluding the terms of the contract and the form of the policy, I will answer it would carry about two years and nine months.

"*Q.* I will ask you another question, Mr. Harvey. Supposing that default was made on the policy on June 4, 1888, and the death of the assured was on the seventh of June, 1888, and the $42 being three-fourths of the net cash value of the policy, would it carry the policy for the full amount written in the policy much beyond the death period according to the statutes of Missouri, based upon the statutes of Missouri ? *A.* No, sir. Under the statutes of Missouri the policy was a policy of $154.

"*Q.* Would not $42 taken as a net single premium carry $2,000 on a man, thirty-two years, four months

old, at the period of the default, which is June 4, 1888; supposing the man died on June 7, 1888, would it not carry the full amount written in the policy beyond the death period, if $65 would carry the same policy for a year? A. There is no possible connection between the $65 and the $42. If you applied the $42 to the purchase of temporary insurance, it would carry it two years and nine months.

"Q. I don't want you to make an argument to me,— that must be left to your lawyers.

"Mr. Harvey: I wish to say that I have no connection in common with any life-insurance company.

"By Mr. Lee: Q. Have you any interest directly or indirectly in this company? A. None whatever,— my position is against all the companies.

"By the Court: Q. State whether the amount of non-forfeitable, paid-up insurance under your computation, on the basis of the terms of the policy in suit, would be as much as the non-forfeitable, paid-up insurance computed under the rule laid down in sections 5986, 5984, of the Revised Statutes of Missouri of 1879? A. My answer was the value of the policy, which I gave at $56, is a little more than the value, pro rata, computed upon the policy under the statutes. As it is, the policy, as provided under the statute, under section 5984, as being $56, the value of the policy, and the value of the pro rata under the statute, section 5984, being $55.14.

"Q. Did you make any computation on the basis of section 5984? A. This last amount I have just given is based on section 5984. There is no regular rule laid down in section 5984 for finding its net value; that is, under section 5983 of the Revised Statutes of 1879.

"Q. In making your computation of the net value under sections 5986 and 5984, did you compute on the case of a limited payment life policy requiring twenty-year payments? A. The value $55.14 which I last

gave, is the value of policy commuted from the twenty-year payment policy to a single payment policy for the two years premium which had been paid *pro rata*, that is, under section 5984.

" *Q.* I will ask you whether the sum $56 was ascertained to be the total of paid-up insurance and indorsed on this policy ? *A.* No, sir.

" *Q.* You made no calculation of that ? *A.* Yes, sir, I have.

" *Q.* What calculation did you make on that basis ? *A.* The calculation of $56 was made to show what the net premiums reserved on the policy were at two and a quarter, nine quarterly premiums having been paid ; then for the purpose of ascertaining whether that value rates under section 5983 about three-fourths, or rather whether three-fourths of that reserve was greater or less than the value by that same standard of mortality and the interest on $154, paid on the policy. I ascertained the value of the $154 on the same day, and that for three-fourths being three-fourths of $56, being $42 ; the value of $154 on the same day is $42.46 ; I made both calculations.

" By counsel for plaintiff : *Q.* Where did you get the $154 ? *A.* That I got from the back of the policy.

" By the court : *Q.* What do you understand to be meant by net value of non-forfeitable, paid-up insurance ; what is net value ? *A.* The net value is the amount of money which the company has on hand, the least amount of money which the company is required to have on hand, which, being put out or invested at four and one-half per cent. interest compounded annually, will make the amount of the policy at the end of the mortality table of insurance, the ground cost of insurance being deducted as you go along.

" *Q.* Can you explain to me from this table on the back of the policy how you arrive at the amount of non-forfeitable, paid-up ·insurance ? *A.* Under the table, if two annual premiums are paid in full, then the

policy being written for $1,000, the paid-up insurance
would be $64.   If three premiums had been paid in full,
then the paid-up policy would be $116.   Now, the dif-
ference between $64 and $116 the two and three prem-
iums is $52.   One-fourth the quarter premiums was paid
after three years; therefore, they deduct one quarter,
and the difference is just $13, and added to $64, making
a paid-up policy for net two and one-quarter payments,
that is $77 for each one thousand dollars.   Now, this
policy being for $2,000 makes the amount, viz., $77, mul-
tiplied by two, or $154.

"*Q.* What did you state to be $42 and something?
*A.*  $42.26 is the value of that $154 of paid-up insur-
ance.

"*Q.* Under the statutes ?  *A.* Yes, sir.

"*Q.* What did you state to be the sum of $56 ?
*A.*  It is the total net premium reserved for paying the
policy at the date of default, three-fourths of which is
applicable to the purchase of temporary insurance."

We have inserted the testimony of witness Harvey
in full for the purpose of showing that, if oral testi-
mony is admissible at all, and if the testimony of that
witness deals with questions of fact as distinguishable
from questions of law, then there was substantial evi-
dence on part of the defendant warranting the judg-
ment rendered.   The testimony of this witness was
contradicted on the question of computation by the
plaintiff's witnesses; but, as the action is one at law, and
no instructions were asked or given, the only questions
presented for review on this appeal are whether the
judgment is against the law, and, if not, whether it is
supported by substantial evidence.   The weight of the
evidence is not for us even on expert evidence, with the
limitation hereinafter stated.

On the first argument of the cause it was contended
by the defendant that, regardless of this question, the
waiver contained in the policy exempted it from the
operation of the sections of the statute above quoted,

We declined to express an opinion on that question then, as the case of *Wall v. Ins. Co.*, 32 Fed. Rep. 273, involving a similar controversy, was then pending on appeal before the supreme court of the United States, and its decision by that court, one way or the other, would settle the question as far as the federal courts are concerned, and would be very persuasive authority in all other courts. That case has since been decided (*Equitable Life Ins. Co. v. Clements*, 140 U. S. 226), and we adopt the views of the supreme court therein expressed, which are to the effect that, where an insurance company does business in this state, and issues its policies to residents of this state, the validity of clauses in its policies must be determined by the laws of this state. The laws of this state establish a rule of public policy, which overrides the freedom of contract of the parties, and makes waivers of statutory provisions ineffectual, although such waivers are contained in the strongest terms in the policies. The difference between the facts of the *Equitable Assurance case* and the present case are not sufficient to call for the application of a different rule in this case.

The plaintiff contends that the evidence of witness Harvey, above set out, as far as it tends to show that the defendant's policy contained clauses for the unconditional commutation of the policy to non-forfeitable, paid-up insurance, for which the net value was equal to that provided for by the statute, was inadmissible, because it was on the one hand an attempt to construe the law, which the court alone could construe, and on the other hand an attempt to construe a written contract, the meaning of which is a question of law and not of fact. It is not claimed by the defendant that such evidence was admissible as far as it tends to construe the meaning of the law, or the meaning of the contract, but it is claimed that it was admissible for the purpose of determining the net value of the policy fixed by the terms of the policy itself, as compared

with its net value fixed by the above statutory provisions. To that extent the evidence was clearly admissible. Courts will take judicial notice of ordinary mathematical propositions as they are bound to take judicial notice of all scientific facts which universal experience has rendered axiomatic. *St. Louis Gaslight Co. v. Ins. Co.*, 33 Mo. App. 348. That rule, however, cannot be made applicable to the ascertainment of a net value of a policy, depending partly on extraneous facts, and partly on the accuracy of an intricate computation. In such cases expert testimony is clearly admissible, and, while it is merely advisory, it cannot be rejected unless it proves itself unworthy of credit on the application of simple mathematical tests. Applying this rule to the evidence of the witness Harvey, we can find no reason either for its exclusion or rejection. The objection, therefore, that that evidence was illegally admitted and unworthy of credit is not well taken.

The plaintiff further contends that the word, policy, as applied to the second subdivision of the exception contained in section 5986, is limited to a kind of policy mentioned in section 5984, and that, therefore, the words, "for which the net value shall be" should be rejected as surplusage in that section as far as they apply to the policy in question, which is a self-acting, unconditional, commutative policy, and should be confined to ordinary life policies.

That the meaning of the section as it now reads is not quite clear we freely concede ; at the same time there is no more warrant for rejecting "the words for which the net value shall be" than for changing section 5984 to 5983, as it is the last-named section only which provides a rule for the ascertainment of net values. We cannot assume that the parties intended to make a contract opposed to the laws of the state, and, if we can uphold it as legal, it is our duty to do so,

as we thus give effect both to the freedom of contract, which courts should not abridge without cause, and to the law.

If the judgment of the trial court can be supported on any theory of the facts, borne out by substantial evidence, it is our duty to affirm it. That it can be supported on the theory that the policy in question is within the exceptions of section 5986, seems to admit of but little controversy. According to the evidence of witness Harvey, the unconditional commuted value of the policy in non-forfeitable, paid-up insurance, as fixed by the policy, is not only equal but greater than it would be if fixed by the terms of the statute. We have gone over that evidence with great care, and, while we freely concede that the inferences which the trial court has made from it are not unavoidable, we cannot say that they are not admissible. We must recognize the fact that this is an action at law wherein the trial court performs the functions of a jury, and, if in the exercise of that function it has made admissible inferences from the evidence produced, we are bound by the finding. With the credit to be given to that evidence as opposed to the testimony of plaintiff's witnesses, we have nothing to do.

The plaintiff's contention, that section 5986 has no application to a case where death occurs during the term of temporary insurance, is not tenable. It is the evident intention of the legislature to put all policies on an equal footing, to make them absolutely non-forfeitable, and, in case of default in payment of any premium, to convert them into commuted policies for a certain sum. When the policy of insurance accomplishes this end, in a manner at least equally as favorable to the assured as the provisions made for his benefit by the law, the three sections of the law have no application. The trial court could have found under the evidence that the policy did that in this case, and, hence, its judgment, which

can be supported by such finding, should not be dis-
turbed.

The judgment is affirmed. Judge BIGGS concurs.
Judge THOMPSON, who is a policy-holder in the defend-
ant company, does not participate in the decision.