MELVINA WHITTAKER, Respondent, v. MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, Appellant.

Kansas City Court of Appeals, November 16, 1908.

1. REVISED STATUTES 1899: When Effective: From and After. The Revised Statutes of Missouri 1899, became effective on the first day of November, 1899, the phrase "from and after" having been so interpreted by the Supreme Court.

2. LIFE INSURANCE: Missouri Contract: Statute. Where an insurance company does business in this State and issues its policies to the residents thereof the validity of the clauses of such policies must be treated by the laws of this State which become a part thereof as much as if copied therein; and a policy issued on the first day of November, 1899, is governed by the Revised Statutes of that year.

3. ————: ————: ————: Default: Extension. Under section 7898, Revised Statutes 1899, default after the payment of three premiums does not forfeit the policy and three-fourths of its net value is to be treated as a premium for the purchase of extended insurance; and section 7900 does not except the policy in suit from the operation of the former section, notwithstanding its stipulations.

4. ———: ———: ———: Automatic Paid-Up Insurance.
The stipulation of a policy relating to automatic paid-up insurance and loans are construed together, and it is held that the former stipulation is not unconditional so as to come within the exceptions of the statute providing for the unconditional commutation of the policy from nonforfeitable paid-up insurance.

Appeal from Saline Circuit Court.—*Hon. Samuel C. Davis,* Judge.

AFFIRMED.

*D. D. Duggins* and *Karnes, New & Krauthoff, James McKeen* and *Frederick L. Allen,* for appellant, filed argument.

*Robert M. Reynolds* and *Burks & Sterrett,* for respondent, filed argument.

JOHNSON, J.—Action on an ordinary life policy of insurance issued by a company domiciled in New York. A jury was waived, the issues were decided in favor of plaintiff and judgment was rendered against defendant as prayed in the petition.

The policy, dated November 1, 1899, provides that in consideration of the application and of the payment of an annual premium of $121.45, the company agrees to pay "Melvina Whittaker, wife of Mark Whittaker, near Miami, in the county of Saline, if living, if not to his executors, administrators or assigns, one thousand dollars upon acceptance of satisfactory proofs at its head office of the death of said Mark Whittaker during the continuance of this policy upon the following conditions," etc. The assured lived in Saline county where the policy was delivered to him and the premiums were paid. He paid four annual premiums, the last one on November 1, 1902. After that, he ceased paying and on March 2, 1904, died in Saline county. Among the stipulations of the policy are the following:

"*Automatic Paid-up Insurance.*—After three full years' premiums have been paid, this policy, upon the non-payment of any subsequent premium, will become a non-participating policy for paid-up insurance, for the amount stated in the table below, for the end of the last year for which complete annual premiums have been paid; provided there be no unpaid loan hereon.

"*Extended Insurance.*—After three full years' premiums have been paid, upon the non-payment of any subsequent premium, within the thirty days of grace, or on satisfactory medical examination within twelve months from the due date of premium, if this policy be surrendered, the Company will issue in lieu thereof a non-participating policy for paid-up insurance for the full amount, to cease after the number of years and months stated in the table below for the end of the last year for which complete annual premiums have been paid; provided there be no unpaid loan hereon.

"*Cash Surrender Value.*—After three full years' premiums have been paid, upon the non-payment of any subsequent premium on the date called for in the policy and within sixty days thereafter, this policy may be surrendered and the company will pay therefor, within sixty days from the date of such surrender, the amount stated in the table below for the end of the last year for which complete annual premiums have been paid, deducting any unpaid loan hereon.

"*Loans.*—After this policy shall have been in force three full years the company, within sixty days after written application, and upon the assignment of this policy as security, will in conformity with its rules then in force, loan amounts within the limits of the cash surrender value, with interest in advance, at the rate of five per cent per annum, provided: (1) that premiums be fully paid to the end of the policy year in which the loan falls due; (2) that in any settlement of this policy all outstanding indebtedness must be paid."

The table printed in the policy to which reference

is made provides that after four annual premiums are paid, the paid-up insurance value of the policy shall be $169, the cash surrender value $98 and the period for which extended insurance may be had two years and four months.   Expert evidence was introduced to the effect that, figured under the rule prescribed in section 7898, Revised Statutes 1899, the paid-up value of the policy was $150.08 on November, 1903, the date of the lapse and that the period for which the assured would have been entitled to extended insurance would extend beyond the date of the death of the assured. After default in the payment of premiums, the assured made no request for either extended or paid-up insurance, nor for cash surrender value of the policy. No loan on the policy was ever made by the company.

The main issue between the parties is this: Plaintiff claims that under the statute, sections 7897 to 7900, inclusive, of the Revised Statutes 1899, the policy should be treated as one for extended insurance and, therefore, that she is entitled to recover its face value (less the amounts of the defaulted premiums), together with interest; while defendant contends that the provisions of the "Automatic Paid-up Insurance" clause of the policy control, and that plaintiff is entitled to recover only the paid-up insurance value which, as stated in the table is $169.

First, it is argued by defendant that as the petition alleges and the proof shows that the policy was issued on November 1, 1899, the contract does not fall within the operation of the Statutes as revised in 1899, but under the Statutes of 1889 as amended in 1895.  [Sections 5856, 5857, 5858 and 5859, Rev. Stat. 1889, and Laws of 1895, pp. 197 and 198.]   The contention is that the revision of 1899 went into effect on the 2d day of November of that year, one day after the policy was issued.   Section 4197, Revised Statutes 1899 provides: "The Revised Statutes as declared by this article shall take effect and go in operation *from and after*

the first day of November in the year of our Lord one thousand eight hundred and ninety-nine." Defendant says that the phrase italicized must be interpreted to exclude the date mentioned, and if this were a question of first impression, we would be inclined to adopt this interpretation. The rule thus is stated in 4 Words and Phrases Judicially Defined, at page 2986: " 'From and After' have no certain or legal meaning that can be accepted, as a guide under all circumstances, but it is generally accepted as a rule that they exclude the day from which the reckoning is to be made," etc. But we find that the Supreme Court and both Courts of Appeals, in effect, have construed the phrase to include the day from which the reckoning shall be made. [State ex rel. v. Edwards, 136 Mo. 368; Hausen v. Insurance Co., 66 Mo. App. 29; City to use v. Smith, 68 Mo. App. 63; Haskell v. Sells, 14 Mo. App. 99.] Neither construction should be considered as a hard and fast canon and since the appellate courts have made a selection, we do not perceive that any good purpose would be accomplished in making the rule adopted a subject of unfavorable criticism. We hold that the revision of 1899 became effective on the first day of November of that year, and that the policy in suit falls within its provisions.

That the policy must be regarded as a Missouri contract subject to the insurance laws of this State is not a debatable proposition. [Cravens v. Insurance Co., 148 Mo. 599; Horton v. Insurance Co., 151 Mo. 604; Price v. Insurance Co., 48 Mo. App. 281; Fletcher v. Insurance Co., 13 Fed. 526; Wall v. Insurance Co., 32 Fed. 275; Smith v. Insurance Co., 173 Mo. 341; Nichols v. Insurance Co., 176 Mo. 374. We quote from Cravens v. Insurance Co., supra.]

"In Price v. Insurance Co., supra, it is said: 'Where an insurance company does business in this State, and issues its policies to residents of this State, the validity of clauses in its policies must be determined

by the laws of this State. The laws of this State establish a rule of public policy, which overrides the freedom of contract of the parties, and makes waiver of statutory provisions ineffectual, although such waivers are contained in the strongest terms in the policies.' Foreign insurance companies which do business in this State, do so not by right but by grace, and must in so doing conform to its laws; they cannot avail themselves of its benefits, without bearing its burdens. Moreover the State may prescribe conditions upon which it will permit foreign insurance companies to transact business within its borders, or exclude them altogether and in so doing violates no contractual rights of the company. [State v. Stone, 118 Mo. 388; Daggs v. Insurance Co., 136 Mo. 382; s. c., 172 U. S. 557.]

"It is, therefore, concluded that the contract is a Missouri contract and governed by the laws of this State.

"Being a Missouri contract the statute then in force with respect to the subject-matter of the contract entered into, and became part thereof, as much so as if copied therein. [State to use v. Berning, 74 Mo. 87; Reed v. Painter, 129 Mo. 1. c. 680; Havens v. Insurance Co., 123 Mo. 403; White v. Insurance Co., 4 Dill. 177.]"

Turning now to the statutes, we find that after the payment of three annual premiums (four were paid in this case), the subsequent default of the assured is not permitted to work a forfeiture of the policy, no matter what may be the terms of the contract the parties attempted to make. In such case, three-fourths of the net value of the policy, to be ascertained in the manner prescribed, is to be treated as a premium for the purchase of extended insurance. Plaintiff stands, on this statute while defendant insists that the clause in the contract headed "Automatic Paid-up Insurance" is operative for the reason that it falls squarely within an exception to section 7897, provided in section 7900, as follows: "The three preceding sections shall not be

applicable in the following cases, to-wit: If the policy shall contain a provision for an unconditional surrender value at least equal to the net single premium for the temporary insurance provided for hereinbefore, or *for the unconditional commutation of the policy for non-forfeitable paid-up insurance* . . . then and in any of the foregoing cases, this article shall not be applicable."

Since the cash surrender value stated in the table appearing in the policy was only $98, a less sum than the "net single premium for temporary insurance," it is not contended by defendant that the first clause of the exception avails it anything, but defendant does contend that the stipulation of the contract under consideration does provide "for the unconditional commutation of the policy for non-forfeitable paid-up insurance. Let us see if it does. The question of whether or not the provisions for paid-up insurance would automatically begin to operate on the default of the assured after he had paid three premiums must be considered from the standpoint of the parties at the time the policy was issued. Was the provision unconditional at that time? Clearly, it was not. If the assured obtained a loan on the policy from the company in the manner stipulated and that loan remained unpaid at the time of the lapse, in such event, the "automatic" clause would become inoperative by its express terms. The clause contained a condition— a very important one—and consequently, it was not unconditional. It matters not that the assured did not procure a loan on the policy. He was given the privilege of borrowing on it with the stipulation that if he did and failed to repay the loan, his subsequent default in the payment of premiums would deprive him of the benefit of the "Automatic" clause. If this is not a condition, it is hard to conceive of what it would take to constitute one. Our conclusion is that the policy does not come within the exceptions in section 7900, but is

controlled by the provisions of the non-forfeiture statute, i. e., section 7897.

It follows that the learned trial judge correctly interpreted and applied the law of the case. Accordingly, the judgment is affirmed. All concur.