## NEW YORK LIFE INS. CO. v. ROSITZKY.*

No. 8825.

Circuit Court of Appeals, Eighth Circuit.

Dec. 12, 1930.

Rehearing Denied Jan. 12, 1931.

Frank H. Sullivan, of St. Louis, Mo. (Cyrus Crane, George J. Mersereau and Richard S. Righter, all of Kansas City, Mo., and James C. Jones, Lon O. Hocker, and James C. Jones, Jr., all of St. Louis, Mo., on the brief), for appellant.

Benjamin Phillip, of St. Joseph, Mo. (Culver, Phillip & Voorhees, of St. Joseph, Mo., on the brief), for appellee.

Before KENYON, BOOTH, and GARDNER, Circuit Judges.

KENYON, Circuit Judge.

Appellee as beneficiary brought suit on four life insurance policies issued by appellant upon the life of Philip Rositzky, a resident of Missouri. This appeal relates to only one thereof, liability being unquestioned as to the others. Upon the policy in question (No. 6659088), appellant admits liability for $5,000, but contests the right to recover the additional $5,000 which the policy provides shall be paid if the death of insured results directly from accident within sixty days from the injury. A jury was waived in writing, and the court made findings of fact and conclusions of law, holding that the policy in

*Certiorari denied 51 S. Ct. —, 75 L. Ed. —.

controversy was by virtue of section 6151, Revised Statutes of Missouri 1919, continued in force, notwithstanding lapse in payment of premium, as extended insurance for the full amount of $10,000 to a time beyond assured's death. What appellant in the brief designates specification of error III clearly raises the real question in the case, viz.:

"The District Court erred in holding, finding and declaring the law to be that the policy here in controversy (No. 6659088) was continued in force upon its lapse for the non-payment of the premium due February 2, 1928, as extended insurance, under section 6151, R. S. Mo. 1919, for the sum of $10,-000.00, to a date beyond insured's death."

As to the question of recovery for vexatious delay, which was before the trial court, it was agreed in the oral argument before us that such point was eliminated. So we consider but the one question, i. e., did the court err in its holding that the insurance as to the $5,000 provided in case of death by accidental means was extended by the Missouri statutes.

The policy provided in part as follows:

"Policy No. 6659088

Chartered 1841

New York Life Insurance Company
Agrees to Pay
to Rose, wife of the Insured * *
(with the right on the part of the Insured
to
———— Beneficiary
Change the Beneficiary in the manner
provided in Section 6)
** Five Thousand ** Dollars
(the face of this Policy) ,
upon receipt of due proof of the death of
** Philip Rositzky ** the Insured; or

"Double the Face of This Policy upon receipt of due proof that the death of the Insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental cause, and that such death occurred within sixty days after sustaining such injury.

* * * * * *

"And the Company Agrees to Pay to the Insured One-Tenth of the Face of This Policy per annum, during the lifetime of the insured, if the Insured becomes wholly and permanently disabled before age 60, subject to all the terms and conditions contained in Section 1 hereof.

"This contract is made in consideration of the payment in advance of the sum of $210.-00, the receipt of which is hereby acknowledged, constituting the first premium and maintaining this Policy to the Second day of February Nineteen Hundred and Twenty-one and of a like sum on said date and every Twelve calendar months thereafter during the life of the Insured until premiums for Twenty full years in all shall have been paid from the date on which this Policy takes effect.

* * * * * *

"The * * * annual premium for the Total and Permanent Disability Benefits is $7.25, and is included in the premium stated on the first page of this Policy. Any premium due on or after the anniversary of the Policy on which the age of the Insured at nearest birthday is 60, shall be reduced by the amount of premium charged for the Disability Benefits."

The premium on the policy was due February 2, 1928. Through some claimed inadvertence on the part of insured's daughter it was not paid, which mistake was undiscovered until the following June, when Mr. Rositzky made application for reinstatement of the policy, and gave his check to appellant for the premium, which was duly deposited by the appellant's branch office at St. Joseph, Mo. On July 3, 1928, the insured, Philip Rositzky, was killed in an automobile accident. Due proofs of loss were made to the insurance company. On September 11, 1928, some months after Rositzky's death, appellant addressed a letter to him at St. Joseph, sending the company's check for the last premium paid, and stating that: "The policy stands lapsed on the Company's books as of February 2nd, 1928." More than three premiums had been paid on this policy. In the trial an agreement was entered into as to its net value as follows:

"In lieu of the figures that we gave as the net value of policy 6659088, on February 2, 1928, it is agreed that the net value of that policy on that date, computed upon the actuary's or combined experience tables of mortality, with interest at four per cent. per annum, is $863.80, of which three-fourths is $647.85."

It is unquestioned that if this $647.85 had been used as a single premium it would have been sufficient to extend the policy for the full amount of $10,000 beyond the date of insured's death.

Section 4 of the policy—surrender value —is as follows:

"After three full years' premiums have

been paid, the Insured may, at the end of any insurance year or within three months after any default in payment of premium, but not later, surrender this policy, and

"(1) Receive its Cash Surrender Value; or

"(2) Receive the amount of non-participating paid-up insurance which the cash surrender value at date of default less any indebtedness hereon will purchase payable at the same time and on the same conditions as this policy, but without disability or double indemnity benefits. The insured may at any time obtain a loan on such paid-up insurance, or surrender it for its cash surrender value; or

"(3) If the policy be not surrendered for cash or for paid-up insurance within three months after default in payment of premium, its cash surrender value at date of default, less the amount of any indebtedness, shall automatically purchase continued insurance from the date of default for the face of the policy plus any dividend additions and less any indebtedness to the company. The continued insurance shall be without future participation and without the right to loans, cash surrender values, disability or double indemnity benefits."

It will be observed that the parties of the policy thereby agreed that no part of the surrender value of the same at the time of any default in payment was to be applied to the purchase of further double indemnity benefits. If that agreement is binding, it would end the case. Of course, appellant could not make a Missouri contract, as this was, in violation of the statutes of Missouri, which must be considered as part of the policy contract and to have the same effect as if written therein. Melvina Whittaker v. Mutual Life Insurance Company of New York, 133 Mo. App. 664, 114 S. W. 53; Cravens v. New York Life Insurance Company, 148 Mo. 583, 50 S. W. 519, 53 L. R. A. 305, 71 Am. St. Rep. 628; Id., 178 U. S. 389, 20 S. Ct. 962, 44 L. Ed. 1116; Smith v. Mutual Benefit Life Insurance Co., 173 Mo. 329, 72 S. W. 935; Great Southern Life Ins. Co. v. Jones (C. C. A.) 35 F.(2d) 122.

The Missouri statutes bearing on this and other questions at issue are sections 6151, 6152, 6153, and 6154, Revised Statutes of Missouri 1919, applicable parts of which we quote or refer to:

"Sec. 6151. *Policies Nonforfeitable, When.*—No policies of insurance on life hereafter issued by any life insurance company authorized to do business in this state, on and after the first day of August, A. D. 1879, shall, after payment upon it of three annual payments, be forfeited or become void, by reason of nonpayment of premiums thereof, but it shall be subject to the following rules of commutation, to wit: The net value of the policy, when the premium becomes due, and is not paid, shall be computed upon the actuaries' or combined experience table of mortality, with four per cent. interest per annum, and after deducting from three-fourths of such net value, any notes given on account of past premium payments on said policy issued to the insured, and any evidence of indebtedness to the company, which notes and indebtedness shall be then canceled, the balance shall be taken as a net single premium for temporary insurance for the full amount written in the policy; and the term for which said temporary insurance shall be in force shall be determined by the age of the person whose life is insured at the time of default of premium, and the assumption of mortality and interest aforesaid;" etc.

"Sec. 6152. *Paid-up Policy May Be Demanded, When.*—At any time after the payment of three or more full annual premiums, and not later than sixty days from the beginning of the extended insurance provided in the preceding section, the legal holder of a policy may demand of the company, and the company shall issue, its paid-up policy, which, in case of an ordinary life policy, shall be for such an amount as three-fourths of the net value of the regular policy at the age and date of lapse, computed according to actuaries' or combined experience table of mortality, with interest at the rate of four per cent. per annum, without deduction of indebtedness on account of said policy, will purchase, applied as a net single premium upon the said table of mortality and interest rate aforesaid;" etc.

"Sec. 6153. *Rule of Payment on Commuted Policy.*—If the death of the insured occur within the term of temporary insurance covered by the value of the policy as determined in section 6151, and if no condition of the insurance other than the payment of premiums shall have been violated by the insured, the company shall be bound to pay the amount of the policy, the same as if there had been no default in the payment of premium, anything in the policy to the contrary notwithstanding;" etc.

Section 6154 provides exceptions to the application of sections 6151, 6152, and 6153, as follows: If policy contains a proviso (a)

for an unconditional surrender value at least equal to the net single premium for the temporary insurance provided in section 6151; or (b) for the unconditional commutation of the policy for nonforfeitable paid-up insurance; (c) unless the legal holder of the policy shall, within sixty days after default of premium, surrender the policy and accept from the company another form of policy; or (d) if the policy shall be surrendered to the company for a consideration adequate in the judgment of the legal holder thereof.

The last two relate to form and are unimportant. (a) and (b), however, must be incorporated in a policy to relieve it from the application of sections 6151, 6152, and 6153. Somewhat similar sections to these were in the Missouri statutes prior to the revision of 1919, and some of the decisions hereinafter referred to were based on these former statutes.

Does the policy in question provide for an unconditional surrender value, or for an unconditional commutation of the policy for nonforfeitable insurance?

The holdings of the Missouri courts show that very slight conditions have prevented the application of section 6154 and placed life insurance policies under the nonforfeiture section of the statute (6151).

A limitation to the effect that the cash surrender value should be applied for in six months was held to be such condition in Paschedag v. Metropolitan Life Ins. Co., 155 Mo. App. 185, 134 S. W. 102. In Whittaker v. Mutual Life Ins. Co. of New York, 133 Mo. App. 664, 114 S. W. 53, it was held that a provision that assured could procure a loan on the policy, and that, if he failed to repay the same, his subsequent default would deprive him of certain benefits, was a condition, and brought the policy under the nonforfeiture statute.

In Smith v. Mutual Benefit Life Insurance Co., 173 Mo. 329, 72 S. W. 935, it was held that a provision of the policy, that the surrender value was payable on condition that it be applied for within three months, was not a provision for an unconditional cash surrender as required by the Missouri statutes, and was not sufficient to take the policy out of the nonforfeiture statute.

In Milburn v. Royal Mutual Life Ins. Co., 209 Mo. App. 228, 236, 234 S. W. 378, 380, the court said: "A policy for paid-up insurance is not the same as a policy for an unconditional commutation of a policy for nonforfeitable paid-up insurance. * * *

And we deem it well settled that a provision that a policy will automatically become 'paid up' under any contingency or limitation is not in any sense the same as a provision for an unconditional commutation into a nonforfeitable paid-up policy." See, also, Cravens v. New York Life Ins. Co., 148 Mo. 583, 50 S. W. 519, 53 L. R. A. 305, 71 Am. St. Rep. 628; Ross v. Capitol Life Ins. Co., 205 Mo. App. 243, 228 S. W. 889; Bothmann v. Metropolitan Life Ins. Co., 299 Mo. 269, 252 S. W. 652.

It is evident that the policy in question here does not contain the necessary unconditional provisions demanded by section 6154 to make inapplicable sections 6151 and 6153, hence the agreement of the parties that no part of the value of the insurance at the time of lapse of premium should be applied to the purchase of double indemnity benefits, being contrary to section 6151, is void. This question is settled by a number of authorities.

Cravens v. New York Life Insurance Company, 148 Mo. 583, 50 S. W. 519, 53 L. R. A. 305, 71 Am. St. Rep. 628, follows Equitable Life Assurance Society v. Clements, 140 U. S. 226, 234, 11 S. Ct. 822, 825, 35 L. Ed. 497, where the Supreme Court of the United States was considering sections 5983–5986 of the Revised Statutes of Missouri of 1879, which sections are somewhat similar to sections 6151–6154 of the Revised Statutes of 1919. It held that these sections were mandatory and not "subject to be set aside by the company with the consent of the assured," and that the rule of commutation upon default in payment of premium was established by said sections 5983–5985, and could not be varied or waived by express provision in the contract except in the cases specified in those statutes, and that any attempt of the insurance company to require assured to agree that at some future time he would surrender the policy upon any terms other than those provided in the policy was futile. The court said: "It follows that the insertion in the policy of a provision for a different rule of commutation from that prescribed by the statute in case of default of payment of premium after three premiums have been paid, as well as the insertion in the application, of a clause by which the beneficiary purports to 'waive and relinquish all right or claim to any other surrender value than that so provided, whether required by a statute of any state or not,' is an ineffectual attempt to evade and nullify the clear words of the statute."

In Smith v. Mutual Benefit Life Ins. Co.,

762

173 Mo. 329, 340–341, 72 S. W. 935, 938, the court said: "Our law deems the subject of life insurance one that requires especial protection, and in this particular it has provided that the policy holder shall have the benefit of the extended temporary insurance specified in section 5856, 'anything in the policy to the contrary notwithstanding.' Therefore, though a policy should expressly declare that it was agreed between the insurer and the insured that the provisions of the statute relating to extended temporary insurance or commutation should not apply, still they would apply. * * * There is a great deal of technical learning on the subject of life insurance, and our lawmakers have proceeded on the theory that the average man who takes out a policy on his life is not equal in skill and learning in the technicality of that subject to the experienced officers of the insurance company, and for that reason have written into such contracts some provisions which the parties to them cannot avoid." See, also, Continental Life Insurance Co. v. Chamberlain, 132 U. S. 304, 10 S. Ct. 87, 33 L. Ed. 341.

Counsel for appellant claims the case of Great Southern Life Insurance Co. v. Jones (C. C. A.) 35 F.(2d) 122, is controlling in principle. That was a case where insured lapsed his policy and was accidentally killed within the period of extended insurance. The Oklahoma statute is not similar to the Missouri one. The Oklahoma statute provides:

"6731. *Life Policy—Contents and Provisions Necessary.* No policy of life insurance shall be issued or delivered in this State or be issued by a life insurance company organized under the laws of this State unless the same shall at least provide in substance the following: * * *

"Eighth. That in event of default in premium payments after premiums shall have been paid for three years, the insured shall be entitled to a stipulated form of insurance, the net value of which shall be at least equal to the reserve at the date of default on the policy and on dividend additions thereto, if any (the policy to specify the mortality table and rate of interest adopted for computing such reserve), less a specified percentage (not more than two and one-half) of the amount insured by the policy and of existing dividend additions thereto, if any, and less any existing indebtedness to the company on or secured by the policy. * * *" Comp. Stat. Okl. 1921.

It is clear that the Oklahoma statute does not fix the extended insurance as the Missouri statute does, but leaves that matter for agree-ment in the policy contract. The Oklahoma statute does not provide that net value of the policy shall be a premium to carry on the insurance "for the full amount written in the policy," and that the company in case of death during time of temporary insurance must pay as if there had been no default in payment of the premium, "anything in the policy to the contrary notwithstanding," as does the Missouri statute (section 6153). Therefore the statutes are quite different, as under the Oklahoma statute the parties could stipulate as to form of extended insurance, while under the Missouri statute they could not, unless the policy came under the terms of section 6154. The Jones Case, supra, is in no way governing.

█ As the rights of the parties here are to be determined under sections 6151 and 6153, we turn to the question of whether this was a policy of "insurance on life" under section 6151.

Appellant contends that the history of insurance legislation in Missouri demonstrates that in enacting the nonforfeiture statute first in 1879 and later in the Revised Statutes of 1889, 1899, and of 1919, the legislative body had in mind that kind of life insurance which possessed a reserve or net value, and not accident insurance, that it could not have intended life insurance to include accident insurance, as the net values of the policies were to be computed thereunder upon tables of mortality which is incompatible with accident insurance, that up to 1879 there was no legislative enactment which used the expression "insurance on life," with any intention that it should apply to accident insurance, and that this statute should be interpreted in the light of ten years of separate legislative dealing with life and accident insurance. The argument assumes that, because this policy provided for additional payment in case of death by accident, it became in part at least a policy of accident insurance. Is this correct? The question would seem to be put at rest by Logan v. Fidelity & Casualty Co., 146 Mo. 114, 47 S. W. 948, 950, decided in 1898. The court had before it section 5855, Revised Statutes of Missouri 1889, now section 6150, Revised Statutes of Missouri 1919, known as the suicide statute, which reads:

"In all suits upon policies of insurance on life hereafter issued by any company doing business in this state, * * * it shall be no defense that the insured committed suicide," etc.

That statute uses the words "policies of

763

insurance on life." These identical words are used in section 6151. We see no reason why the words do not mean the same in both statutes. The policy in the Logan Case, supra, covered death by accidental means. The same contention was made as here that it was not a life insurance policy but an accident policy. The court held it to be a policy of "insurance on life," saying:

"When a policy covers loss of life from external, violent, and accidental means alone, why is it not insurance on life? Such a provision incorporated in a general life insurance policy admittedly would be insurance on life. Then, why less insurance on life because not coupled with provisions covering loss of life from usual or natural causes as well? * * *

"The mere addition of one or more features or elements in a contract of insurance on life, that may serve to give the contract or policy a particular designation in the business or insurance world, will not in the least devest the contract or policy of its chief character of insurance on life, or make the contract other than life insurance. The promise to pay a weekly indemnity by an insurance company in the event the insured receives an injury from an accident not resulting in death, does not change the character of the agreement of the policy to pay a certain other sum when the accident results fatally, which is life insurance from accidental causes, as the promise to pay a certain stipulated sum to the insured (now contained in many of the policies issued by what is known as 'old-line' life insurance companies), when the insured attains a given age, or in a definite specified time, and if before the insured arrives at the age designated, or before the time fixed for its certain payment, he shall die from any cause, accidental or otherwise, to pay his legal representatives or some one named in the policy as beneficiary the amount stipulated, is none the less life insurance because coupled with an investment or bond feature, not found in what is commonly known as a 'straight' life insurance policy. The calling of a contract of insurance an 'accident,' 'tontine,' or 'regular' life policy, or, for that matter, by any other appellation that may be adopted for business or conventional uses or classification, cannot make a policy containing an agreement to pay to another a sum of money designated upon the happening of an unknown or contingent event, depending upon the existence of life, less a policy of insurance on life.

"Insurance on life includes all policies of insurance in which the payment of the insurance money is contingent upon the loss of life."

In Moore v. Northwestern Life Insurance Co., 112 Mo. App. 696, 702, 87 S. W. 988, 989, the policy contained an accident clause. The contention was made that it was not a policy of "insurance on life" because of the accident clause. The court said: "And because the policy contains an accident clause does not prevent it from being a policy of insurance on life, within the meaning of section 7897, supra. Logan v. Casualty Co., 146 Mo. 115, 47 S. W. 948."

In Lamport and Commerce Trust Co. v. General Accident, Fire & Life Assurance Corp., Ltd., 272 Mo. 19, 38, 197 S. W. 95, 100, the policy was an accident policy which provided for $10,000 payment for loss of life and contained other provisions of indemnity for accidents. The court said: "It has been held that a policy of this character, at least with reference to those portions providing indemnity for loss of life, were policies of life insurance, within the meaning of the suicide statute of this state. Logan v. Fidelity & Casualty Co., 146 Mo. 114, 47 S. W. 948."

In Metropolitan Life Insurance Company v. Insurance Commissioner, 208 Mass. 386, 389, 94 N. E. 477, the court said: "An ordinary life insurance policy includes the occurrence of death by accident as one of the conditions which call for a payment by the company, as well as death from any other cause, and ordinary accident policies include injuries by accident causing death, and to that extent they provide insurance of life. Yet neither of these two classes of policies is, for that reason, brought within the other class also."

In Standard Life & Accident Ins. Co. of Detroit, Mich., v. Carroll (C. C. A.) 86 F. 567, 570, 41 L. R. A. 194, it was held that under an accident policy strictly the provision as to death resulting from accident within ninety days did not make the instrument a life insurance policy either in a popular or legal sense.

If the insured had met with an accident, but had not died until sixty days thereafter, there would have been $5,000 payable as the result of death by accident. Would the policy therefore cease to be a policy of insurance on life? If death arises from accident, it is unquestioned that the $5,000 would be life insurance. If death happens within sixty days from the accident, the additional $5,000 is to be paid as additional indemnity for the

764

death. The inquiry of the trial court in the opinion is pertinent that, if one-half of the "double indemnity" is accident insurance, why is not the whole? Surely the mere time within which death should occur would not change the character of the insurance. Under the Missouri decisions the policy in question here must be held to be a policy of "insurance on life," as to the entire $10,000 within the meaning of section 6151.

While so holding, we agree that section 6151 does not cover all policies of life insurance where there is a lapse in payment of premiums. The policy to come thereunder must not only provide for "insurance on life," but must also have a net value to be used as a single premium to pay for extended insurance. The following authorities are sufficient to sustain that proposition:

In Mutual Reserve Life Ins. Co. v. Roth, 122 F. 853, 856, this court held that an assessment policy of insurance where there was no reserve did not come under the terms of the statute. This court said: "It is manifest, therefore, that, according to the contract existing between the parties, the premiums payable were not to remain fixed or level during the life of the policy, but were expressly made indefinite in amount, and dependent upon the mortuary necessities of the company. * * * In other words, the contract in suit was one whereby the member was required to pay from one assessment period to another the actual cost of insurance during that period, without paying an additional sum to be husbanded and accumulated to make up a deficit in future years, when the cost of carrying the risk on the member's life became greater. All of the actuaries agreed that when insurance is conducted on this plan, which may be called either 'term insurance,' or 'insurance on the natural premium plan,' a policy can have no actual net value; and that fact is obvious, because, if an insurance company collects from its policy holders, from one assessment period to another, no more than is necessary to pay losses which occur in the meantime, it can have nothing in its treasury to reinsure outstanding risks, or give them a net value."

In Westerman v. Supreme Lodge Knights of Pythias, 196 Mo. 670, 94 S. W. 470, 5 L. R. A. (N. S.) 1114, the state court followed the Roth Case, supra, and held that the provisions of the nonforfeiture sections had no application to benefit certificates which were not the type of policies contemplated, and that there must be some net value to the pol-

icy, that the statute applied to old line companies and not to fraternal benevolent associations where the insurance was provided by assessments levied from time to time to meet losses and no premiums were fixed. See, also, State ex rel. Supreme Lodge Knights of Pythias v. Vandiver, 213 Mo. 187, 111 S. W. 911, 15 Ann. Cas. 283.

Rose v. Franklin Life Ins. Co., 153 Mo. App. 90, 132 S. W. 613, 616, defines "net value" of an insurance policy under section 7897, Revised Statutes of Missouri 1899 (similar to section 6151, Revised Statutes of 1919) as, "the accumulation of the balance of past net premiums not absorbed in carrying the risk." Appellant issues its life insurance policies for fixed premiums, and does not follow the assessment plan.

While to bring the policy under section 6151 it must have a net value at the time of lapse of premium, the statute does not point out just how that reserve or net value must be acquired further than to provide that it shall "be computed upon the actuaries' or combined experience table of mortality." That this policy had a net value based "upon the actuaries' or combined experience table of mortality" is exactly what was admitted on the trial. Appellant, therefore, having admitted a net value on February 2, 1928, computed upon the actuaries' or combined experience table of mortality, is not now in position to deny that there is such net value to the policy.

Appellant contends that in fact there are three contracts of insurance, one for life insurance in the sum of $5,000, one for accident insurance in the same amount, and one for disability insurance, and that it is the duty of the court to separate the consideration and find that there is in fact a policy of life insurance, and one of accident insurance, and that the nonforfeiture statute does not apply to the accident insurance. As to the disability insurance, it may be said that there is a separation of premium, the policy providing an annual premium of $7.25 to cover the disability provisions. The question of whether that could be extended is not before us.

The contract between the insurance company and the insured provides a separation of consideration as to insurance for death and insurance for disability. If it were intended to have separate contracts as to insurance for death and insurance by accidental death, the policy could easily have so stated. That is not what the insured agreed to. If there was a separate premium to be paid

for what is termed by appellant accident insurance, to wit, the additional $5,000, there would be strength in appellant's position. We see no reason why a court should seek to find a way to divide the premium paid for death indemnity into a payment for life insurance and also for accident insurance when appellant has not done so in its contract. Appellant introduced expert witnesses who testified that the part of the premium necessary to carry the so-called accident insurance was $7.75 per annum, and that the amount charged for that risk was not sufficient to give the part of the policy which appellant contends was an accident policy a net value, and hence there was no net value to be used as a single premium to carry that extended insurance. The complete answer is that there were not two separate contracts for insurance, one on life and the other for accident, supported by separate considerations. There was one policy on life, no matter how death was caused, but, if caused by accident, there was to be a larger indemnity for the loss of life. It was still life insurance and covered by the single consideration. No features of accident insurance were in the policy outside of this one provision.

It is hardly conceivable that, if Mr. Rositzky had attempted to cancel the $5,000 of admitted life insurance and carry the other $5,000 for accident insurance at a premium of $7.75 per annum on the theory that there were in fact two separate contracts, the insurance company would have acceded to the request. The premiums charged and paid for insurance (not considering the provision as to disability insurance) were sufficient to carry the insurance and create a net value at the time of lapse in payment of premiums. The situation as to premium is as expressed in New York Life Insurance Co. v. Statham et al., 93 U. S. 24, 30, 23 L. Ed. 789: "Each instalment is, in fact, part consideration of the entire insurance for life. * * * The whole premiums are balanced against the whole insurance."

Mr. Scott, who was in the actuarial department of appellant, testified that the accident feature was a "selling argument." We quote from the record:

"Q. As a matter of fact what was the purpose of putting the double indemnity feature into the policy? Why did the company do it? A. Well, the double indemnity feature was only brought out about 1918, just with the idea of attracting attention, a selling argument, something for our field force to present, a new angle, something new for our agents to go and solicit business on, nothing more than a competitive proposition added to the contract to make it more attractive."

It is to be noted that Mr. Scott continually referred in his testimony to this policy as a "life insurance policy," a "twenty-payment life policy." If this was an advertising proposition, part of the extra cost of the double indemnity may have been included in the gross premiums charged. The question is not, however, as to just how the net value was arrived at. The lay mind, unacquainted with the insurance business, would have difficulty understanding the actuaries' methods of arriving at net values. The question is, Was the premium charged sufficient to result in a net value? It was, and so section 6151 and section 6153 apply to this policy. Counsel for appellant insists that under the authority of Business Men's Assur. Co. of America v. Campbell (C. C. A.) 32 F.(2d) 995, the court should have divided the annual premium named in the policy (exclusive of the part for disability) into component parts, and have found there were two definite sums included therein, one for life insurance and one for accident insurance. The facts in the Campbell Case are quite different from the facts here. The risks there assumed were distinct; one related to bodily injuries, the other to loss from sickness, and the amounts to be paid were distinctly separated. The policy provided that the accident insurance was not to cover injury caused by disease, and the health insurance did not cover sickness on account of injuries by accidental means. Under that policy there could have been two separate actions. We do not perceive the applicability of the Campbell Case, supra, to the facts of this case. The only separation of liability here was as to disability and as to death.

Appellant complains that to apply this statute to what is termed the accident feature of this particular contract produces an unjust result, and in a way requires the insurance company to carry the so-called accident insurance for $5,000 without compensation therefor, and that such difficulties pass away if the statute is interpreted as "only applicable to so much of the insurance contract the net cost whereof is capable of ascertainment by reference to the prescribed mortality table and on the prescribed interest assumption."

It was agreed in the trial that the annual premium for a new policy just like this policy for one of the age of forty-four, which would be the insured's age on February 2, 1928, would be $262.15 per annum. If on

that date the insured had taken a new policy exactly similar to this policy, he would have paid a premium of $262.15. This was more than covered by three-fourths of the agreed net value of the policy in dispute. The company under the extended insurance provided by section 6151 was carrying the same risk for the same compensation as if a new policy had been taken on February 2, 1928. If the premium had been paid on February 2, 1928, the policy in the amount of $10,000 would have been continued, and no question would have arisen that the company was carrying the risk of double indemnity for a premium that compensated it only for the $5,000 indemnity. The extension of the insurance by the statute automatically brought about the same result, and there is no more injustice in the one instance than in the other. Surely the agreement as to net value of the policy computed upon actuaries' or combined experience table of mortality would not have been made if there were not a net value to the policy covering both what appellant terms the life insurance feature and the accident feature.

As the policy in our judgment is within the provisions of section 6151, Missouri Statutes of 1919, it was continued for the "full amount written in the policy," which is $10,-000 over a period during which Mr. Rositzky died. Under section 6153 the appellant company was bound to pay "the amount of the policy, the same as if there had been no default in the payment of premium." The able argument of counsel for appellant that this policy really is a series of policies is ingenious and raises some perplexity, but we cannot escape the conclusion that the extra amount of $5,000 provided in the policy, if insured meet death by accident, was life insurance and not accident insurance. The judgment of the trial court is affirmed.